IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **SECURE ENERGY, INCORPORATED,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SECURE ENERGY DECATUR, LLC,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. _____** |
| | ) | |
| **COAL SYNTHETICS, LLC,** | ) | **Plaintiffs Demand Trial by Jury** |
| | ) | |
| **Serve: CT Corporation System** | ) | |
| **4169 Westport Road** | ) | |
| **Louisville, KY 40207** | ) | |
| | ) | |
| **ICON CONSTRUCTION, INC.,** | ) | |
| | ) | |
| **Serve: Icon Construction, Inc.** | ) | |
| **Naren Patel** | ) | |
| **10501 Success Lane** | ) | |
| **Dayton, OH 45458** | ) | |
| | ) | |
| **DATEL ENGINEERING, LLC,** | ) | |
| | ) | |
| **Serve: Naren Patel** | ) | |
| **10501 Success Lane** | ) | |
| **Dayton, OH 45458** | ) | |
| | ) | |
| **NARENDRA RAMDAS PATEL,** | ) | |
| **(a/k/a Naren Patel),** | ) | |
| | ) | |
| **Serve: 10501 Success Lane** | ) | |
| **Dayton, OH 45458** | ) | |
| | ) | |
| **JESSE GUMP,** | ) | |
| | ) | |
| **Serve: 10501 Success Lane** | ) | |
| **Dayton, OH 45458** | ) | |
| | ) | |

MATTHEW NAREN PATEL,                        )
                                            )
    Serve: 775 Deer Bend Court          )
       Springboro, OH 45066           )
                                            )
STUART A. ROSE,                             )
                                            )
    Serve: 2875 Needmore Road           )
       Dayton, OH 45414               )
                                            )
And                                         )
                                            )
BRYAN HANDY,                                )
                                            )
    Serve: 12411 Dominion Way           )
       Louisville, KY 40299           )
                                            )
Defendants.                                 )

## COMPLAINT

Plaintiffs Secure Energy, Incorporated ("Secure Energy") and Secure Energy Decatur, LLC (together with Secure Energy, "Secure"), for their claims against Defendants Coal Synthetics, LLC ("Coal Synthetics"), Icon Construction, Inc. ("Icon"), Datel Engineering, LLC ("Datel"), Narendra Ramdas Patel (a/k/a Naren Patel), Jesse Gump ("Gump"), Dr. Matthew Naren Patel, Stuart A. Rose ("Rose"), and Bryan Handy ("Handy"), respectfully state as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Secure Energy is a Delaware corporation with its principal place of business in Clayton, Missouri.  Secure Energy is a development company focused on coal conversion technologies.

2.     Plaintiff Secure Energy Decatur, LLC is a Delaware limited liability company, with its principal place of business in Clayton, Missouri.  Secure Energy Decatur, LLC is wholly owned by Secure Energy.  Secure Energy Decatur, LLC was formed for the purpose of owning, constructing and operating Secure Energy's Decatur, Illinois coal gasification facility.

3.      Defendant Coal Synthetics, LLC is a Kentucky limited liability company, with its principal place of business in Dayton, Ohio.

4.      Defendant Icon Construction, Inc. is an Ohio corporation, with its principal place of business in Dayton, Ohio.  Icon provides engineering and construction services to industrial clients.

5.      Defendant Datel Engineering, LLC is an Ohio limited liability company, with its principal place of business in Dayton, Ohio.  Datel works together with Icon to provide engineering services to industrial clients.

6.      Defendant Narendra Patel is a resident of the state of Ohio.  Narendra Patel is a principal and registered agent of Icon and Datel, and is registered as a professional engineer with the State of Ohio.  Upon information and belief, Narendra Patel has an equity ownership interest in Coal Synthetics.

7.      Upon information and belief, Defendant Jesse Gump is a resident of the State of Ohio.  Gump is employed by Icon and Datel.  Upon information and belief, Jesse Gump has an equity ownership interest in Coal Synthetics.

8.      Upon information and belief, Defendant Dr. Matthew Naren Patel is a resident of the State of Ohio, is one of two managers of Coal Synthetics, and holds an equity ownership interest in the company.  Upon information and belief, Dr. Patel is a medical doctor licensed in the State of Ohio, specializing in emergency medicine, and is the son of Narendra Patel.

9.      Upon information and belief, Defendant Rose is a resident of the State of Ohio, is one of two managers of Coal Synthetics, and holds an equity ownership interest in the company.  Mr. Rose is the CEO and Chairman of Rex Stores Corporation, a Dayton, Ohio-based electronics

corporation incorporated in Delaware.  Rex Stores Corporation's stock is listed on the New York Stock Exchange and trades under the symbol "RSC."

10.     Upon information and belief, Defendant Bryan Handy is a resident of the State of Kentucky.  Handy is an independent contractor who has done work for Secure through his former employer, Kentuckiana Engineering Co., Inc. ("Kentuckiana"), and is working with Icon on behalf of Coal Synthetics, Matthew Patel and Rose.

11.     This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

12.     Plaintiffs' claims arise under the Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1961 et seq.), the Missouri Uniform Trade Secrets Act ("MUTSA," Mo. Rev. Stat. § 417.450 et seq.), the Missouri Professional Engineering Licensing law (Mo. Rev. Stat. § 327.011 et seq.), the Missouri Uniform Securities Act ("MUSA," Mo. Rev. Stat. § 409.1-102 et seq.), and common law.

13.     This court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states, and the amount in controversy exceeds $75,000.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), (b) and (c).

## FACTS

### Secure Energy, Incorporated and Secure Energy Decatur, LLC

15.     Jack Kenny and Lars Scott are the founding members of Secure Energy.  These founding members came together in 2005 and began the development of a business to capitalize on coal gasification, a process to convert coal to natural gas or other types of fuels, products or ammonia fertilizer such as urea.

16.     Secure Energy was incorporated in 2006.

17.     The development of Secure's coal gasification business has taken countless hours and a large amount of capital.  In order to develop this project, approximately 48,000 hours of engineering services have been performed to date, Secure has made preliminary equipment purchases in order to facilitate the necessary engineering, and Secure has expended approximately $40,000,000.

*Icon, Datel, Narendra Patel and Jesse Gump*

18.     In June 2006, Secure entered into an agreement with Icon and Datel for engineering design services for its Decatur plant (hereinafter, the "Contract").  Pursuant to Phase I of this agreement, Icon and Datel agreed to provide design engineering services for Secure's Decatur plant, including a process description, major equipment selection, cost estimates, and project schedules, culminating in the production of a financeable set of engineering drawings and specifications.  Secure agreed to pay Icon and Datel $1,000,000 dollars and was to issue 250,000 shares of Secure Energy stock in exchange for Phase I engineering services.

19.     Pursuant to Phase II of the Contract, Icon and Datel agreed to provide detailed engineering plans and drawings as a result of the equipment bidding process.  Phase II was to be billed on an hourly basis.  Phase III was to include construction coordination services, and Phase IV was to include engineering and management services to commission and start-up the plant. Phase III was to be paid on a 5% mark up basis, and Phase IV was to return to hourly billing.

20.     The letter of intent that comprises the Contract was executed by the parties with the intention of later replacing it with a comprehensive engineering services agreement.

21.     During both the negotiations and course of  its engagement, Narendra Patel repeatedly represented to Secure that Secure would be Icon/Datel's only client and that all

employees of Icon/Datel would be devoted on a full-time basis to Secure's project.  Secure is the only client listed on Icon's website (www.iconconstructioninc.com).

22.     Icon and Datel have failed to deliver financeable engineering plans, specifications and designs to Secure, but claim to still be working on such documents.  In addition, Icon and Datel exceeded the $1,000,000 Phase I amount, and began billing Secure hourly.  To date, Secure has paid Icon and Datel with 250,000 shares of Secure Energy stock, which was valued when issued at $2.00 per share, as well as more than $2,600,000 in cash.

23.     In connection with the issuance of the 250,000 shares of Secure Energy stock, on June 1, 2007, Narendra Patel, on behalf of Icon, executed a Stockholder Agreement with Secure (the "Stockholder Agreement").  This Agreement contains a confidentiality provision, which provides Stockholders:

> will (i) treat and hold as confidential and (ii) refrain from using . . . all information concerning the business and affairs of the Company that is not generally available to the public . . . provided, however, that Stockholder may provide Company Confidential Information on a confidential basis to its agent . . . (but not to any Person who competes with the Company).

The Stockholder Agreement further provides that in case of breach, "the other parties will suffer immediate and irreparable harm that will not be compensable by damages alone."  In addition to other remedies and damages available at law, the Stockholder Agreement provides that the parties "shall be entitled to seek temporary, preliminary and permanent injunctions in order to prevent or restrain any such breach, and such parties shall not be required to post a bond as a condition for the granting of such relief."  Finally, the Stockholder Agreement provides for the recovery of attorney's fees by the prevailing party.

24.     As principal for Icon and Datel, Narendra Patel has performed extensive engineering studies and services on Secure's project.  In the course of providing professional

engineering services on this project, Narendra Patel was privy to Secure's sensitive and proprietary information relating to its business plans, the financing structure, and the coal gasification plant.

25.    Jesse Gump is employed by Icon and Datel.  Jesse Gump is working and has been working on Secure's project, and was privy to Secure's sensitive and proprietary information relating to its business plans, financing structure, and coal gasification plant.

26.    Narendra Patel, Jesse Gump, Icon and Datel assisted Secure in its decision to locate its initial plant in Decatur, Illinois.  All four defendants were involved when Secure considered other potential locations for its initial and subsequent coal gasification plants, including Western Kentucky, and were provided access to all documentation regarding any of the proposed sites.

27.    Narendra Patel, Icon and Datel participated as engineering advisor to Secure in connection with the raising of capital and financing for the project, and as such had access to all documentation and other information in connection with such aspect of the project.

28.    Narendra Patel, Icon and Datel assisted Secure in evaluating, negotiating and selecting Secure's major equipment and process vendors on a world-wide basis, including Siemens Power Generation, Inc (Germany), Siemens Energy (U.S.), UOP Honeywell (U.S.), Davy Processing (U.K.), Johnson Matthey (U.K.), Red Mountain Energy Corporation (Russia, U.S. and China), Parth Technical Services (India) and Williams Patent Crusher & Pulverizer Company (U.S.), and as such had access to all documentation and other information in connection with this aspect of the project.

29.    On numerous occasions, Narendra Patel and Gump have traveled to Secure's offices in Clayton, Missouri as part of the execution and performance of the Contract.  Similarly,

7

essentially all of Icon and Datel's employees have traveled to Secure's offices in Missouri to work on this project.

30.     In connection with the performance of the Contract, Narendra Patel, Gump, and essentially all of Icon and Datel's employees have been privy to Secure's sensitive, confidential and proprietary information relating to its coal gasification business.

31.     Icon and Datel mailed all invoices to Secure by way of the United States Mail. Secure's checks paying those invoices were drawn on Secure's Missouri bank, and cashed in Ohio.

32.     Icon and Datel's business address is 10501 Success Lane, Dayton, Ohio.

33.     Narendra Patel is a professional engineer, registered with the State of Ohio. Narendra Patel is not registered as a professional engineer with the States of Missouri or Illinois.

_Coal Synthetics, Matthew Patel and Rose_

34.     Coal Synthetics was organized on December 19, 2007 by Matthew Patel and Rose.

35.     On information and belief, Matthew Patel, Rose, Narendra Patel and Gump hold equity ownership interests in Coal Synthetics.

36.     Coal Synthetics' business address is listed as 10501 Success Lane, Dayton, Ohio, the same business address as Icon, Datel and Matthew Patel.

37.     In early 2008, Coal Synthetics announced its intent to develop a site in western Kentucky, Hancock County, for its coal gasification plant.

38.     Coal Synthetics has hired Icon and Datel to provide it with engineering services for its Kentucky plant.

39.     Coal Synthetics is soliciting private equity investments for its Kentucky project, and has solicited such an investment from Secure's lead investor, ARC Financial Corp., based in Calgary, Alberta.

40.     To date, Coal Synthetics has applied for and received preliminary approval to receive the proceeds from an industrial bond issue from Hancock County, Kentucky in the amount of $950,000,000 for the development of its plant.

41.     On May 23, 2008, Coal Synthetics applied for environmental permits for its Kentucky facility from the Kentucky Department of Environmental Protections.  Such permit applications were signed by Rose.

42.     On June 3, 2008 Narendra Patel and Icon/Datel employee Edward Lekson appeared before the Kentucky Department of Environmental Protection on behalf of Coal Synthetics, in order to clarify and explain Coal Synthetics' processes to the permitting authorities.

43.     On June 3, 2008, the same day as Narendra Patel's appearance before the Kentucky Department of Environmental Protection, Icon billed Secure for ten (10) hours of Narendra Patel's time.  This bill was paid by Secure.

44.     Coal Synthetics has approached Secure Energy vendors, including Siemens, UOP, Johnson Matthey and Sud Chemie, to supply equipment and related engineering for its Kentucky coal gasification plant.

45.     With the assistance of Icon and Datel, Coal Synthetics has devised a schedule for development of its Kentucky plant, which is virtually identical to that of Secure but for the front-end engineering and design, which took Secure from the third quarter 2005 to January 2008

(over 31 months) to complete, ten months more than Coal Synthetics' schedule.  Coal

Synthetics' development schedule is as follows:

- Front-end engineering and design – May through November 2008
- Technology providers identified – May through November 2008
- Vendors selected – December 2008 through first quarter 2009
- Process design and construction engineering – first quarter 2009 through 4th quarter 2009
- Fabrication and deliveries – 1st quarter 2009 through 4th quarter 2010
- Construction, installation and start up – 2nd quarter 2009 through 1st quarter 2011
- Ramp-up to full production – 1st quarter 2011 through 4th quarter 2011

46.     It would be impossible for Coal Synthetics to comply with this schedule had they

developed their own engineering plans and specifications and business plans.  This schedule is

made possible only through the misappropriation of Secure's trade secret information, which

took in excess of three years, and significant funding, to develop.

*Bryan Handy*

47.     Bryan Handy was previously employed by Kentuckiana, an engineering firm

retained by Secure to provide it with environmental engineering services.

48.     In connection with his employment with Kentuckiana, Handy worked on Secure's

Decatur engineering project, giving him access to Secure's sensitive, confidential and proprietary

information.

49.     Kentuckiana and Secure entered into a confidentiality agreement, whereby

Kentuckiana agreed to keep confidential any sensitive, confidential, or proprietary information

acquired from Secure.

50.     In connection with his employment with Kentuckiana, Handy was bound by

Secure and Kentuckiana's confidentiality agreement.

51.     Handy subsequently left the employ of Kentuckiana, and became an independent

contractor.  In this context, Handy began working for Coal Synthetics, Rose and Matthew Patel.

*Secure's Trade Secrets*

52.     In the process of establishing its coal gasification business in Decatur, Illinois, Secure has developed a valuable collection of trade secret information.

53.     Such trade secret information was acquired over the course of several years, through Secure's painstaking investigation of the coal gasification process, a fledgling industry in the United States.

54.     Secure's trade secret information includes, but is not limited to the following assets:

       (a)     identification and evaluation of plant locations;

       (b)     financial modeling;

       (c)     development of engineering plans and specifications;

       (d)     business plan;

       (e)     identification and development of a worldwide vendor network (including Germany, Canada, Russia, France, China, U.K., India and the United States); and

       (f)     development of necessary project bidding estimates.

55.     Secure's trade secret information described above was developed after much trial and error, at great expense to Secure.  Furthermore, the trade secret information has an independent economic value to anyone interested in establishing a coal gasification plant, because it would allow a developer to save three years and countless sums of money in developing a project, by alleviating the need to conduct investigational development work that would never result in a benefit to the development of the project.

*Defendants' Duty and Breach*

56.     Defendants Icon, Datel, and Narendra Patel owed Secure a duty to perform their obligations under the Contract, and to comply with the Stockholder Agreement with Secure.

57.     As agents and contractors of Secure, Icon, Datel, Narendra Patel, Gump and Handy owed Secure a duty of loyalty.

58.     As professional engineers hired by Secure, Icon, Datel, and Narendra Patel owed Secure:

>        (a)     a duty to comply with state and federal law;

>        (b)     A duty to refrain from accepting compensation from more than one party for the same work;

>        (c)     A duty to disclose all potential conflicts of interest; and

>        (d)     A duty to abstain from revealing Secure's confidential, proprietary or privileged facts, sensitive information or data without Secure's express consent.

59.     As a shareholder of Secure, Icon owed Secure a fiduciary duty.

60.     All of the defendants owed Secure a duty not to interfere with Secure's contract and business relationship with Icon and Datel.

61.     All of the defendants knew or had reason to know that Secure's trade secrets were acquired by improper means.

62.     All of the defendants had a duty not to conspire to defraud Secure.

63.     Defendants Icon, Datel, Narendra Patel and Gump breached the duties and responsibilities described above by:

>        (a)     failing to devote their full time and attention to Secure's Decatur project and meet the deadlines that were set by the Contract;

(b)     by acting with the sole purpose of delaying Secure's Decatur project and diverting resources to Coal Synthetics;

(c)     by billing and receiving payment from Secure for services done for Coal Synthetics;

(d)     by revealing to Coal Synthetics, Secure's direct competitor, virtually all of Secure's confidential information acquired from Secure in the process of their performance of services for the company;

(e)     by failing to disclose to Secure that they were simultaneously providing professional services for, and had obtained an equity ownership interest in, Coal Synthetics, a direct competitor of Secure; and

(f)     by failing to disclose to Secure that Defendants were taking Secure's proprietary and confidential business information, and using it to advance the interests of Coal Synthetics to establish its plant in western Kentucky as a competitor to Secure.

64.     Defendants Coal Synthetics, Matthew Patel and Rose breached these duties and responsibilities described above by:

(a)     establishing and financing Coal Synthetics using proprietary and confidential information taken from Secure;

(b)     obtaining a facility to use for the development of a coal gasification plant in Hancock County, Kentucky on the basis of proprietary and confidential information taken from Secure;

(c)     applying for environmental permits on behalf of Coal Synthetics on the basis of proprietary and confidential information taken from Secure; and

(d)      soliciting and obtaining preliminary approval for bonds from Hancock County, Kentucky, using proprietary and confidential information taken from Secure.

65.      Defendant Handy breached these duties and responsibilities described above by:

(a)      by revealing to Coal Synthetics, Secure's direct competitor, confidential information acquired from Secure in the process of performing services for the company; and

(b)      by failing to disclose to Secure that he was taking Secure's proprietary and confidential business information, giving it to Coal Synthetics, Secure's competitor, and using it to establish Coal Synthetic's plant in western Kentucky.

66.      All of the above-described conduct by Defendants was malicious, outrageous, malevolently motivated, and was in complete reckless and conscious disregard for the rights of Secure and the consequences of their actions.  Such evil motive justifies an award of punitive damages against Defendants to deter similar conduct in the future.

*Secure's Damages*

67.      As a direct and proximate result of the defendants' actions described above, Secure has lost more than $2.6 million dollars paid to Icon and Datel.

68.      As a direct and proximate result of the defendants' actions described above, Secure granted and issued 250,000 shares of Secure Energy stock to Icon, which has resulted in Icon obtaining an ownership interest in Secure.

69.      As a direct and proximate result of the defendants' actions described above, Secure is behind in the engineering and construction schedule of its Decatur plant.  Secure is now forced to hire a new engineering firm, which firm will incur the added expense and time of familiarizing itself with the project, will be required to perform a detailed review of all prior

14

engineering and to re-perform much of the engineering and design services for which Secure has already paid Icon.  This will undoubtedly set Secure back significantly in the timing of the development and construction of its plant.

70.     As a direct and proximate result of the defendants' actions described above, Secure has lost its proprietary and confidential information to Coal Synthetics, a direct competitor.  Secure will be damaged in the future as Coal Synthetics makes use of this confidential, proprietary information to usurp corporate opportunities from Secure, including plant locations and funding for current and future projects.

71.     Secure's business plan is based on the development of the initial plant in Decatur, followed immediately by the construction of additional plants.  As a direct and proximate result of the defendants' actions described above, Secure has lost the advantages that should have been granted to it through their position as the first mover in this market segment, thereby denying it access to obtaining the most prime plant locations, registered patents and trademarks, vendor contracts, equity and debt financing, government bonds,  labor, construction resources, raw materials, and shop fabrication space.

72.     As a direct and proximate result of the defendants' actions described above, Secure is damaged in that Coal Synthetics has usurped the opportunity to develop a gasification plant in western Kentucky, an opportunity which Secure planned to take advantage of after the development of its Decatur plant.

## COUNT 1 – BREACH OF STOCKHOLDER AGREEMENT
### (Against Icon)

73.     Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

74.    On or about June 1, 2007, Plaintiff Secure Energy and Icon entered into a valid Stockholder Agreement.

75.    The Stockholder Agreement contains mutual obligations wherein Secure agrees to transfer 250,000 shares of Secure Energy stock to Icon, and Icon agrees to provide engineering services to Secure in connection with the establishment of Secure's Decatur coal gasification facility. The Stockholder Agreement contains a confidentiality provision, wherein each stockholder agrees that it will:

> (i) treat and hold as confidential and (ii) refrain from using . . . all information concerning the business and affairs of the Company that is not generally available to the public . . . provided, however, that Stockholder may provide Company Confidential Information on a confidential basis to its agent . . . (but not to any Person who competes with the Company).

76.    Defendant Icon breached this confidentiality provision by revealing to Coal Synthetics, Secure's direct competitor, confidential information acquired from Secure in the process of its work for the company.

77.    Defendant Icon breached this confidentiality provision by taking Secure's proprietary and confidential business information, giving it to Coal Synthetics, Secure's direct competitor, and using it to establish Coal Synthetic's plant in western Kentucky.

78.    As a direct and proximate result of these breaches, Secure has been damaged, in an amount which has yet to be determined, but in excess of $3 million, plus costs, attorneys fees and interest.

79.    As a direct and proximate result of these breaches, Secure is entitled to damages, its costs and attorneys fees, and preliminary and permanent injunctive relief, pursuant to the terms of the Stockholder Agreement.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 1 in their favor, and against Icon, for such damages as are fair and reasonable, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, for preliminary and permanent injunctive relief as set forth in Count 11, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 2 – BREACH OF FIDUCIARY DUTY
### (Against Narendra Patel, Icon, Datel, Jesse Gump and Bryan Handy)

80.     Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

81.     The code of professional responsibility applicable to engineers imposes a duty of loyalty and confidentiality on Narendra Patel, Icon, and Datel, as professional engineers.  Mo. Admin. Code. § 20 C.S.R. § 2030-2.010; Ohio Admin. Code § 4733-35-05; Ill. Admin. Code tit. 68 § 1380.300(d)(1).

82.     The Stockholder Agreement imposed a duty of confidentiality on Icon, and provides that stockholders:

> will (i) treat and hold as confidential and (ii) refrain from using . . . all information concerning the business and affairs of the Company that is not generally available to the public . . . provided, however, that Stockholder may provide Company Confidential Information on a confidential basis to its agent . . . (but not to any Person who competes with the Company).

83.     While working for Secure, Narendra Patel, Icon, Datel, Gump and Handy misappropriated confidential information from Secure, and provided that information to Coal Synthetics, Matthew Patel and Rose.

84.     While working for Secure, Narendra Patel, Datel, Icon, Gump and Handy pursued a relationship with Rose, Matthew Patel and Coal Synthetics within the same exact industry, thereby directly competing with Secure.

17

85.     While working for Secure, each of Narendra Patel and Gump obtained an equity ownership interest Coal Synthetics, a direct competitor of Secure, without disclosing the conflict of interest to Secure.

86.     Icon fraudulently billed and accepted payment from Secure for work Icon performed for Coal Synthetics, a direct competitor of Secure.

87.     Such acts amount to a breach of the fiduciary duty owed by defendants Narendra Patel, Icon, Datel, Gump and Handy to Secure.

88.     As a direct and proximate result of the aforementioned breaches, Secure has been damaged, in an amount which has yet to be determined, but in excess of $3 million, plus punitive damages, costs, attorneys fees and interest.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 2 in its favor, and against Defendants Narendra Patel, Icon, Datel, Gump and Handy, jointly and severally, for such damages as are fair and reasonable, for punitive damages, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 3 – FRAUD
### (Against Narendra Patel, Icon, Datel, Jesse Gump and Bryan Handy)

89.     Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

90.     Defendants Icon, Datel, and Narendra Patel falsely represented to Secure that they were devoting their full time and attention to Secure's Decatur project, and that they would be able to meet the deadlines that were set by the Agreement, and instead acted with the sole purpose of delaying Secure's Decatur project, and diverting resources to Coal Synthetics.

91.     Defendants Icon, Datel, Narendra Patel, Gump and Handy falsely represented to Secure that they would not reveal confidential information acquired from Secure in the process of their performance of services for the company, even though the defendants intentionally disclosed such information to Coal Synthetics, a direct competitor of Secure.

92.     In the face of a duty to disclose, Defendants Icon, Datel, Narendra Patel, and Gump failed to disclose to Secure that at the time they were furnishing services to Secure, they were also furnishing services on a similar project to Coal Synthetics.

93.     In the face of a duty to disclose, Defendants Icon, Datel, Narendra Patel, Gump and Handy failed to disclose to Secure that they were using proprietary, confidential information they had obtained from, devised for, and created with Secure, in order to establish Coal Synthetics' Kentucky plant.

94.     In the face of a duty to disclose, Defendants Narendra Patel and Gump obtained an equity ownership interest in Coal Synthetics without identifying to Secure their equity ownership interest in a direct competitor.

95.     Defendants Icon, Datel, Narendra Patel and Handy had a duty to disclose this information to Secure, as they were in a position of superior knowledge and information compared to Secure.  Neither the existence of Coal Synthetics, nor Icon, Datel, Narendra Patel, Gump and Handy's involvement with Coal Synthetics were facts that were reasonably available to Secure.

96.     In addition, state codes of professional conduct applicable to professional engineers imposed a duty upon Icon, Datel, and Narendra Patel to disclose their conflicts of interest to Secure and to refrain from revealing Secure's privileged and confidential information.

Mo. Admin. Code. § 20 C.S.R. 2030-2.010(9), (10), (14); Ohio Admin. Code § 4733-35-05; Ill. Admin. Code tit. 68 §1380.300(d)(1).

97.     Icon fraudulently billed and accepted payment from Secure for services rendered by Icon to Coal Synthetics.

98.     The aforementioned representations and omissions were material to Secure entering into and continuing its relationship with Icon, Datel, Narendra Patel, and Gump.  Had Secure been aware of the falsity of these representations and omissions, it would not have continued to pay Icon pursuant to the Contract.

99.     Icon, Datel, Gump, and Narendra Patel were aware of the falsity of their representations and omissions at the time they were made, as they planned to use their work for Secure to obtain information beneficial to Coal Synthetics and for their personal gain.

100.    Secure was unaware of the omissions in question, and the falsity of the representations.  Secure based its continued relationship with Icon, Datel, Narendra Patel and Gump on its belief that such representations were true and on their lack of awareness of the omissions.

101.    Secure reasonably relied on the representations and omissions, and Icon, Datel, Narendra Patel, Gump and Handy intended them to so rely.

102.    As a direct and proximate result of the misrepresentations and omissions set forth in the preceding paragraphs, Secure has suffered damages.  Specifically, Secure has lost more than $3 million dollars, including 250,000 shares of company stock, as well as its proprietary, confidential information.  Secure will be damaged in the future as Coal Synthetics makes use of this confidential, proprietary information to usurp corporate opportunities from Secure.

103.    Icon, Datel, Narendra Patel, Gump and Handy's fraud referenced in the preceding paragraphs have damaged Plaintiffs in an amount which has yet to be determined, but in excess of $3 million dollars, plus punitive damages, costs, attorneys fees, and interest.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 3 in its favor, and against Defendants Icon, Datel, Narendra Patel, Gump and Handy, jointly and severally, for such damages as are fair and reasonable, for punitive damages, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 4 – NEGLIGENT MISREPRESENTATION
### (Against Narendra Patel, Icon, Datel, Jesse Gump and Bryan Handy)

104.    Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

105.    Defendants Icon, Datel, and Narendra Patel falsely represented to Secure that they were devoting their full time and attention to Secure's Decatur project, and that they would be able to meet the deadlines that were set by the Agreement, and instead acted with the sole purpose of delaying Secure's Decatur project, and diverting resources to Coal Synthetics.

106.    Defendants Icon, Datel, Narendra Patel, Gump and Handy falsely represented to Secure that they would not reveal confidential information acquired from Secure in the process of their work for the company, even though the defendants intentionally disclosed such information to Coal Synthetics, a direct competitor of Secure.

107.    In the face of a duty to disclose, Defendants Icon, Datel, Narendra Patel, Gump and Handy failed to disclose to Secure that at the time they were working for Secure, they were also working on a similar project for Coal Synthetics.

21

108.     In the face of a duty to disclose, Defendants Icon, Datel, Narendra Patel, Gump and Handy failed to disclose to Secure that they were using proprietary, confidential information they had obtained from, devised for, and created with Secure, in order to establish Coal Synthetics' Kentucky plant.

109.     In the face of a duty to disclose, Defendants Narendra Patel and Gump obtained an equity ownership interest in Coal Synthetics without identifying to Secure their equity ownership interest in a direct competitor.

110.     Defendants Icon, Datel, Narendra Patel, Gump and Handy had a duty to disclose the information described in the above paragraphs to Secure, as they were in a position of superior knowledge and information compared to Secure.  Neither the existence of Coal Synthetics, nor Icon, Datel, Narendra Patel, Gump or Handy's involvement with Coal Synthetics were facts that were reasonably available to Secure.

111.     In addition, state codes of professional conduct applicable to professional engineers imposed a duty upon Icon, Datel, and Narendra Patel to disclose their conflicts of interest to Secure, and to refrain from revealing Secure's privileged and confidential information. Mo. Admin. Code. § 20 C.S.R. 2030-2.010(9), (10), (14); Ohio Admin. Code § 4733-35-05; Ill. Admin. Code tit. 68 §1380.300(d)(1).

112.     Icon fraudulently billed and accepted payment from Secure for services rendered by Icon to Coal Synthetics.

113.     Defendants Icon, Datel, Narendra Patel, Gump and Handy made the aforementioned misrepresentations and omissions in order to induce Secure to entering into and continuing its business relationship with them.  Had Secure been aware of the falsity of these representations and omissions, it would not have continued to pay Icon and Datel pursuant to the

Contract, or to continue to share confidential and proprietary information with Handy, as an employee of Kentuckiana.

114.    Icon, Datel, Narendra Patel, Gump and Handy were aware of the falsity of their representations and omissions at the time they were made, as they planned to use their work for Secure to obtain information beneficial to Coal Synthetics.

115.    Secure reasonably relied on the representations and omissions, and Icon, Datel, Narendra Patel, Gump and Handy intended them to so rely.

116.    As a direct and proximate result of the misrepresentations and omissions set forth in the preceding paragraphs, Secure has suffered damages.  Specifically, Secure has lost more than $3 million dollars, including 250,000 shares of company stock, as well as its proprietary, confidential information.  Secure will be damaged in the future as Coal Synthetics makes use of this confidential, proprietary information to usurp corporate opportunities from Secure.

117.    Icon, Datel, Narendra Patel, Gump and Handy's negligent misrepresentations referenced in the preceding paragraphs have damaged Plaintiffs in an amount which has yet to be determined, but in excess of $3 million dollars, plus punitive damages, costs, attorneys fees, and interest.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 4 in their favor, and against Defendants Icon, Datel, Gump, Handy and Narendra Patel, jointly and severally, for such damages as are fair and reasonable, for punitive damages, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 5 – TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Narendra Patel, Jesse Gump, Bryan Handy,
### Matthew Patel, Stuart A. Rose and Coal Synthetics)

118.    Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

119.    In June 2006, Secure entered into a business relationship and contract with Icon and Datel for engineering design services at is Decatur plant.

120.    As a principal of Icon and Datel, Narendra Patel was aware of this agreement.

121.    As employees of Icon, working on Secure's project, Handy and Gump were aware of this agreement.

122.    By virtue of its own business relationship with Icon, Datel, Narendra Patel, and Jesse Gump, Coal Synthetics, Matthew Patel and Rose were also aware of Icon, Datel and Narendra Patel's business relationship with Secure.

123.    With full awareness of Secure's business relationship with Icon and Datel, Coal Synthetics, Rose, Matthew Patel, Handy, Gump and Narendra Patel nevertheless pursued and retained Icon and Datel's engineering services, and misappropriated and made use of Secure's confidential and proprietary information for their own benefit.

124.    These defendants' intentional retention of Icon and Datel, and the intentional misappropriation and use of Secure's confidential business information to their benefit violated Icon's agreements with Secure.  As such, these defendants deliberately, wrongfully and without justification interfered with the business expectation of Secure, by inducing Icon and Datel to breach their contract and business relationship with Secure.

125.     Handy, Rose, Matthew Patel and Coal Synthetics are not parties to the business relationship between Secure and Icon and Datel.  As such, there exists no legal justification for their interference with that relationship.

126.     Furthermore, Narendra Patel, Gump and Handy's duty of loyalty not to compete with Secure provided them with no legal justification for interfering with Icon and Datel's contract and business relationship with Secure.

127.     As a direct and proximate result of the defendants' tortious interference referenced in the preceding paragraphs, Plaintiffs have been damaged in an amount which has yet to be determined, but in excess of $3 million dollars, plus punitive damages, costs, attorneys fees, and interest.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 5 in their favor, and against all Defendants, jointly and severally, for such damages as are fair and reasonable, for punitive damages, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 6 – MISAPPROPRIATION OF TRADE SECRETS UNDER MO. REV. STAT. § 417.450 et seq.
### (Against All Defendants)

128.     Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

129.     Secure's coal gasification technology business plan, including the methods, techniques, processes and devices used in the conversion of coal to natural gas and other products including urea and ammonia described in paragraphs 52 through 55 above, constitutes a protectable trade secret under the Missouri Uniform Trade Secrets Act ("MUTSA").  Mo. Rev.

Stat.§§417.453(4).  Specifically, this information constitutes a trade secret under MUTSA because:

        (a)     This information was acquired by Secure through a painstaking, several-year investigative process;

        (b)     This information is inherently valuable to anyone starting a coal gasification plant and holds a significant economic value standing on its own;

        (c)     Coal gasification technology is not commonly known, but is based on specialized, highly technical information known only to a select number of companies;

        (d)     Secure goes to great lengths to protect its confidential information, requiring anyone with access to it to sign a confidentiality agreement; and

        (e)     Coal Synthetics has been soliciting investors with a projected project timeline that would be impossible for any new coal gasification company to meet without the advantage of Secure's trade secret information.

130.    In the face of an explicit duty to keep confidential such information, Narendra Patel, Icon, Datel, Gump and Handy disclosed Secure's trade secret information to defendants Rose, Matthew Patel and Coal Synthetics without Secure's consent.  Defendants owed Secure a duty to keep such information confidential pursuant to the confidentiality provision of the Stockholder Agreement and professional engineering requirements.  <u>See</u>, Mo. Admin. Code § 20 C.S.R. 2030-2.010; Ohio Admin. Code § 4733-35-05; Ill. Admin. Code tit. 68 § 1380.300(d).

131.    Such disclosure amounts to misappropriation under MUTSA.  Mo. Rev. Stat. § 417.453(2).

132.    Defendants acquired Secure's proprietary and confidential information with full knowledge that such information was wrongfully obtained from Secure.  Such acquisition amounts to misappropriation under MUTSA.  Mo. Rev. Stat. § 417.453(2).

133.    As a direct and proximate result of defendants' misappropriation of Secure's trade secrets under MUTSA, Plaintiffs have been damaged in an amount which has yet to be determined, but in excess of $3 million dollars, plus punitive damages, costs, attorneys fees, and interest.

134.    For the reasons set forth above, Secure is entitled to a preliminary and permanent injunction, enjoining defendants from using Secure's misappropriated trade secrets.  Mo. Rev. Stat. § 417.455.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 6 in their favor, and against all Defendants, jointly and severally, for such damages as are fair and reasonable, including those amounts which unjustly enriched Defendants in the furtherance of their intentional misappropriation of Secure's protectable trade secrets, for punitive damages, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, for a preliminary and permanent injunction, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 7 – UNFAIR COMPETITION
### (Against All Defendants)

135.    Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

136.    Secure's coal gasification technology business plan, including the methods, techniques, processes and devices used in the conversion of coal to natural gas and other products including ammonia and urea described in paragraphs 44 through 47 above, constitutes a

protectable trade secret under the Missouri Uniform Trade Secrets Act ("MUTSA").  Mo. Rev. Stat.§§417.453(4).

137.    Narendra Patel, Icon, Datel, Gump and Handy communicated Secure's trade secret information to defendants Rose, Matthew Patel and Coal Synthetics.

138.    At the time of this communication, Narendra Patel, Icon, Datel, Gump and Handy had an explicit duty to keep such information secret and confidential.  Defendants owed Secure a duty to keep such information confidential pursuant to the Stockholders Agreement, Kentuckiana's confidentiality agreement with Secure, and professional engineering requirements.  See, Mo. Admin. Code § 20 C.S.R. 2030-2.010; Ohio Admin. Code § 4733-35-05; Ill. Admin. Code tit. 68 § 1380.300(d).

139.    The aforementioned acts amount to unfair competition.

140.    As a direct and proximate result of defendants' unfair competition, Plaintiffs have been damaged in an amount which has yet to be determined, but in excess of $3 million dollars, plus punitive damages, costs, attorneys fees, and interest.

141.    For the reasons set forth above, Secure is entitled to a preliminary and permanent injunction, enjoining defendants from using Secure's trade secrets.  Mo. Rev. Stat. § 526.030.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 7 in their favor, and against all Defendants, jointly and severally, for such damages as are fair and reasonable, including those amounts which unjustly enriched Defendants in the furtherance of their intentional misappropriation of Secure's protectable trade secrets, for punitive damages, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, for a preliminary and permanent injunction, and for such other and further relief as this Court deems just and proper under the circumstances.

protectable trade secret under the Missouri Uniform Trade Secrets Act ("MUTSA").  Mo. Rev. Stat.§§417.453(4).

137.    Narendra Patel, Icon, Datel, Gump and Handy communicated Secure's trade secret information to defendants Rose, Matthew Patel and Coal Synthetics.

138.    At the time of this communication, Narendra Patel, Icon, Datel, Gump and Handy had an explicit duty to keep such information secret and confidential.  Defendants owed Secure a duty to keep such information confidential pursuant to the Stockholders Agreement, Kentuckiana's confidentiality agreement with Secure, and professional engineering requirements.  See, Mo. Admin. Code § 20 C.S.R. 2030-2.010; Ohio Admin. Code § 4733-35-05; Ill. Admin. Code tit. 68 § 1380.300(d).

139.    The aforementioned acts amount to unfair competition.

140.    As a direct and proximate result of defendants' unfair competition, Plaintiffs have been damaged in an amount which has yet to be determined, but in excess of $3 million dollars, plus punitive damages, costs, attorneys fees, and interest.

141.    For the reasons set forth above, Secure is entitled to a preliminary and permanent injunction, enjoining defendants from using Secure's trade secrets.  Mo. Rev. Stat. § 526.030.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 7 in their favor, and against all Defendants, jointly and severally, for such damages as are fair and reasonable, including those amounts which unjustly enriched Defendants in the furtherance of their intentional misappropriation of Secure's protectable trade secrets, for punitive damages, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, for a preliminary and permanent injunction, and for such other and further relief as this Court deems just and proper under the circumstances.

28

## COUNT 8 – CIVIL CONSPIRACY
### (Against All Defendants)

142.     Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

143.     As outlined in this Complaint, all of the defendants have committed a variety of torts and crimes against Secure, with the common purpose of furthering the establishment of Coal Synthetics and its coal gasification operations in Kentucky.

144.     The defendants had a meeting of the minds to agree upon this common purpose to commit fraud against Secure, misappropriate its proprietary information, and use that information in order to establish a coal gasification plant for Coal Synthetics in western Kentucky.

145.     The defendants committed several acts in the furtherance of this common purpose, including:

(a)     the establishment and financing of Coal Synthetics using proprietary and confidential information taken from Secure;

(b)     acquiring the equity ownership interest by Narendra Patel and Jesse Gump in Coal Synthetics;

(c)     obtaining a facility to use for the development of a coal gasification plant in Hancock County, Kentucky, on the basis of proprietary and confidential information taken from Secure;

(d)     applying for environmental permits on behalf of Coal Synthetics on the basis of proprietary and confidential information taken from Secure;

(e)     soliciting and obtaining bonds from Hancock County, using proprietary and confidential information taken from Secure;

(f)     Icon, Datel, Narendra Patel, Gump and Handy's theft of confidential and proprietary information from Secure;

(g)     Defendant Rose's signing of Coal Synthetics' environmental permits; and

(h)     Matthew Patel's agreement to serve as manager of Coal Synthetics.

146.   Such acts amount to a civil conspiracy, in violation of Missouri law.

147.   As a direct and proximate result of the civil conspiracy set forth in the preceding paragraphs, Secure has suffered damages.  Specifically, Secure has lost more than $3 million dollars, including 250,000 shares of company stock, as well as its proprietary, confidential information.  Secure will be damaged in the future as Coal Synthetics makes use of this confidential, proprietary information to usurp corporate opportunities from Secure.

148.   The defendants' conspiracy referenced in the preceding paragraphs has damaged Plaintiffs in an amount which has yet to be determined, but in excess of $3 million dollars, plus punitive damages, costs, attorneys fees, and interest.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 8 in their favor, and against all Defendants, jointly and severally, for such damages as are fair and reasonable, for punitive damages, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, and for such other and further relief as this Court deems just and proper under the circumstances.

### COUNT 9 – VIOLATION OF MISSOURI UNIFORM SECURITIES ACT
### MO. REV. STAT. §§ 409.1-102 et seq.
### (Against Narendra Patel, Icon and Datel)

149.   Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

150.     Defendants Icon, Datel, and Narendra Patel falsely represented to Secure that they were devoting their full time and attention to Secure's Decatur project, and that they would be able to meet the deadlines that were set by the Agreement, even though the defendants acted with the sole purpose of delaying Secure's Decatur project, and diverting resources to Coal Synthetics.

151.     Defendants Icon, Datel and Narendra Patel falsely represented to Secure that they would not reveal confidential information acquired from Secure in the process of their work for the company, even though the defendants intentionally disclosed such information to Coal Synthetics, a direct competitor of Secure.

152.     In the face of a duty to disclose, Defendants Icon, Datel and Narendra Patel failed to disclose to Secure that at the time they were working for Secure, they were also working on a similar project for Coal Synthetics.

153.     In the face of a duty to disclose, Defendants Icon, Datel and Narendra Patel failed to disclose to Secure that they were using proprietary, confidential information they had obtained from, devised for, and created with Secure, in order to establish Coal Synthetics' Kentucky plant.

154.     Icon fraudulently billed and accepted payment from Secure for services rendered by Icon to Coal Synthetics.

155.     Secure was unaware of the omissions or the falsity of the representations described above, nor could it have known of the omissions or representations with the exercise of reasonable care.

156.     Defendants Icon, Datel and Narendra Patel made the aforementioned misrepresentations and omissions in order to induce Secure to convey 250,000 shares of Secure

Energy stock to them.  Such stock constitutes a "security" as that term is defined in Mo. Rev. Stat. § 409.1-102(28).

157.    Secure Energy stock was awarded to Icon in connection with services to be provided by Icon pursuant to Phase I of the Contract, through delivery of a financeable set of engineering drawings.  Accordingly, every time Icon billed Secure for Phase I services, it violated the Missouri Uniform Securities Act, Mo. Rev. Stat. § 409.5-501.

158.    As a direct and proximate result of the misrepresentations and omissions set forth in the preceding paragraphs, Secure has suffered damages in the loss of 250,000 shares of Secure Energy stock conveyed to defendants as a result of the aforementioned fraud.

159.    Icon's fraud referenced in the preceding paragraphs have damaged Plaintiffs in an amount which has yet to be determined, plus costs, attorney's fees, and interest.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 9 in their favor, and against Icon, for such damages as are fair and reasonable, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for interest as permitted by law, and for such other and further relief as this Court deems just and proper under the circumstances.

### COUNT 10 – VIOLATION OF STATE PROFESSIONAL ENGINEERING LAW
#### (Against Narendra Patel)

160.    Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

161.    Defendant Narendra Patel practiced professional engineering in the States of Missouri and Illinois without a license, in violation of Mo. Rev. Stat. § 327.076.1 and 225 ILCS § 325/39-4.

162.    Specifically, Narendra Patel held himself out to Secure as willing or able to render creative work in Missouri, the adequate performance of which required engineering education,

training and experience in the application of specialized knowledge of mathematical, physical and engineering sciences to such work, in connection with their work on Secure's Decatur project.

163.     Defendant Narendra Patel failed to comply with federal and state law in connection with his professional engineering work for Secure, in violation of state codes of professional responsibility applicable to professional engineers.  Mo. Admin. Code. § 20 C.S.R. 2030-2.010; Ohio Admin. Code § 4733-35-07; Ill. Admin. Code tit. 68 §1380.300.

164.     Defendant Narendra Patel accepted compensation from both Secure and Coal Synthetics for the same work on the establishment of a coal gasification plant, in violation of state codes of professional responsibility applicable to professional engineers.  Mo. Admin. Code. § 20 C.S.R. 2030-2.010; Ohio Admin. Code § 4733-35-05; Ill. Admin. Code tit. 68 §1380.300(d)(2).

165.     Defendant Narendra Patel failed to disclose his conflict of interest in Coal Synthetics to Secure, in connection with his professional engineering work for Secure, in violation of state codes of professional responsibility applicable to professional engineers.  Mo. Admin. Code. § 20 C.S.R. 2030-2.010; Ohio Admin. Code § 4733-35-05; Ill. Admin. Code tit. 68 §1380.300(d)(1).

166.     Defendant Narendra Patel obtained an equity ownership interest in Coal Synthetics, while he was working for Secure, and failed to disclose this financial conflict of interest to Secure, in violation of state codes of professional responsibility applicable to professional engineers.  Mo. Admin. Code. § 20 C.S.R. 2030-2.010l; Ohio Admin. Code § 4733-35-05; Ill. Admin. Code. Tit. 68 § 1380.300.

167.    Defendant Narendra Patel revealed confidential, proprietary, and privileged facts, sensitive information and data about Secure's business and Decatur facility to Coal Synthetics, without Secure's express consent, in violation of state codes of professional responsibility applicable to professional engineers.  Mo. Admin. Code. § 20 C.S.R. 2030-2.010; Ohio Admin. Code § 4733-35-05; Ill. Admin. Code tit. 68 §1380.300(a)(3).

168.    As a direct and proximate result of these violations of state professional engineering rules and regulations, Secure has suffered damages.  Specifically, Secure has lost more than $3 million dollars, including 250,000 shares of company stock, as well as its proprietary, confidential information.  Secure will be damaged in the future as Coal Synthetics makes use of this confidential, proprietary information to usurp corporate opportunities from Secure.

169.    Narendra Patel's violations of state professional engineering rules and regulations referenced in the preceding paragraphs have damaged Plaintiffs in an amount which has yet to be determined, but in excess of $3 million dollars, plus punitive damages, costs, attorneys fees, and interest.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment on Count 9 in their favor, and against Defendant Narendra Patel, jointly and severally, for such damages as are fair and reasonable, for punitive damages, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses, for prejudgment interest as permitted by law, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 11 – VIOLATION OF RACKETEER, INFLUENCE AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1964
### (Against All Defendants)

170.    Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

171.    Beginning in 2007, Defendants Icon, Datel, Narendra Patel, Jesse Gump and Bryan Handy defrauded Secure by forming an enterprise to engage in a pattern of racketeering activity in order to advance the development of Coal Synthetics.  These Defendants further engaged in the following pattern of racketeering activity in defrauding Secure by:

(a)    falsely representing to Secure that they were devoting their full time and attention to Secure's Decatur project, and that they would be able to meet the deadlines that were set by the Agreement, and instead acted with the sole purpose of delaying Secure's Decatur project, and diverting resources to Coal Synthetics;

(b)    failing to adequately assist Secure in engineering the construction of its Decatur plant;

(c)    revealing to Coal Synthetics, Secure's direct competitor, confidential information acquired from Secure in the process of their professional services for Secure;

(d)    failing to disclose to Secure that they were simultaneously working for Coal Synthetics, a direct competitor of Secure, and a company run by Narendra Patel's son;

(e)    failing to disclose to Secure that they obtained an equity ownership interest in Coal Synthetics, a direct competitor of Secure;

(f)    failing to disclose to Secure that they were taking Secure's proprietary and confidential business information, and providing it for the benefit of Coal Synthetics,

35

Secure's competitor, so that Coal Synthetics could use it to establish its Plaint in Western Kentucky; and

(g)     Icon fraudulently billed and accepted payment from Secure for services rendered by Icon to Coal Synthetics.

172.    Beginning in 2007 and continuing today, Defendants Matthew Patel, Rose and Coal Synthetics also joined this enterprise and engaged in racketeering activity in order to further this conspiracy to defraud Secure when they:

(a)     established and financed Coal Synthetics using proprietary and confidential information taken from Secure;

(b)     obtained a project site for the development of a coal gasification plant in Hancock County, Kentucky on the basis of proprietary and confidential information taken from Secure;

(c)     applied for environmental permits on behalf of Coal Synthetics employing proprietary and confidential information taken from Secure; and

(d)     solicited and obtained preliminary approval for bonds from Hancock County, Kentucky, using proprietary and confidential information taken from Secure.

173.    The enterprise defendants perpetrated these acts of fraud against Secure by sending invoices to Secure and receiving payments from Secure through the United States Mail, in violation of the federal Mail Fraud statute, 18 U.S.C. § 1341.

174.    The enterprise defendants also perpetrated these acts of fraud against Secure by utilizing the telephone, facsimile machines, and electronic mail, all across state lines, in violation of the federal Wire Fraud statute, 18 U.S.C. § 1343, and by utilizing electronic mail messages from or through a computer in violation of 18 U.S.C. § 1037.

175.    The enterprise defendants perpetrated these acts of criminal fraud against Secure by misappropriating Secure's trade secrets and using them to obtain a facility for Coal Synthetics in Hancock County, Kentucky, to enter into leases to purchase equipment, to obtain environmental permits, and to solicit and obtain preliminary approval for $950 million in bonds from Hancock County, Kentucky.  Because Secure's misappropriated trade secrets have a value greatly in excess of $10,000, these acts of criminal fraud constitute violations of the federal Racketeering statute, 18 U.S.C. § 1957.

176.    Together, these acts of fraud amount to violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO").

177.    The alleged predicate acts relate to each other and are part of a common plan by Defendants to defraud Plaintiffs.

178.    As a direct and proximate result of these violations of RICO, Secure was injured in its business.  Specifically, Secure has lost more than $3 million dollars, including 250,000 shares of company stock, as well as its proprietary, confidential information.  Secure will be damaged in the future as Coal Synthetics makes use of this confidential, proprietary information to usurp corporate opportunities from Secure.

179.    The defendants' violations of RICO referenced in the preceding paragraphs have damaged Plaintiffs in an amount which has yet to be determined, but in excess of $3 million dollars, plus punitive damages, costs, attorneys fees, and interest.

WHEREFORE, Plaintiffs hereby prays that this Court enter judgment on Count 11 in their favor, and against all Defendants, jointly and severally, for treble such damages as are fair and reasonable, for Plaintiffs' taxable court costs, for reasonable attorneys' fees and expenses,

for interest as permitted by law, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 12 – INJUNCTIVE RELIEF
### (Against All Defendants)

180.    Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

181.    Defendants have misappropriated Secure's trade secrets, and are continuing to use those trade secrets in order to establish and operate a coal gasification facility in western Kentucky, all in violation of the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.450 et seq.

182.    Defendants' misappropriation of such trade secrets provided Coal Synthetics with a significant head start in the establishment and marketing of its business.

183.    Secure has no adequate remedy at law for such continuing acts of misappropriation by the Defendants, as Secure cannot obtain legal relief for harms which by definition, will occur in the future.

184.    Without the equitable relief requested, Secure will continue to suffer such uncompensated harms at the hand of Defendants.

185.    The balance of the equities favors the equitable relief sought by Secure in this Count.

186.    All conditions precedent to Secure's bringing and prevailing on this cause of action have been fully satisfied.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment in their favor on Count 12, against Defendants, ordering the following preliminary and permanent injunctive relief:

(a)     Prohibiting Defendants from operating any coal gasification project;

(b)     Prohibiting Defendants from operating any project that makes use of Secure's proprietary and confidential information;

(c)     Prohibiting Defendants from disseminating any information generated by or provided to Defendants or any employees or agents of Icon and Datel in connection with Icon and Datel's work for Secure;

(d)     Declaring that Secure is the owner of any plans, engineering drawings, financing documents, or other intellectual property generated by or provided to Defendants in connection with Icon and Datel's work for Secure; and

(e)     Ordering Defendants to pay Secure's taxable court costs and reasonable attorneys fees and expenses, as permitted by law, and ordering such other and further relief as this Court deems just and proper under the circumstances.

### COUNT 13 – CONSTRUCTIVE TRUST
**(Against all Defendants)**

187.     Plaintiffs repeat, reallege and incorporate by reference paragraphs 1 through 72 above as fully as if set forth verbatim herein.

188.     Defendants currently have possession of Secure's sensitive, confidential, and proprietary information relating to Secure's coal gasification business, and will be further unjustly enriched if allowed to retain any proprietary property of Coal Synthetics.

189.     As outlined above in Counts 1 through 12, such sensitive, confidential and proprietary information was obtained from Secure without permission, as a result of various criminal acts which amount to fraud.

190.     As outlined above in Counts 1 through 12, Defendants gained such sensitive, confidential and proprietary information from Secure in direct violation of Narendra Patel, Jesse

Gump, Bryan Handy, Icon and Datel's confidential relationship with Secure, as determined by applicable engineering laws, the Stockholder Agreement, and Kentuckiana's confidentiality agreement with Secure.

191.   Defendants will be unjustly enriched if they are allowed to retain possession of Secure's trade secrets, in that they will gain an unfair advantage in starting a coal gasification business, at Secure's direct expense, and will further be unjustly enriched if allowed to retain any proprietary property of Coal Synthetics, including, but not limited to, retaining any ownership interest in Coal Synthetics.

192.   Defendants are under a duty to convey back to Secure the trade secret information and proprietary property in question.

WHEREFORE, Plaintiffs hereby pray that this Court enter judgment in their favor on Count 13, against Defendants, ordering the imposition of a constructive trust over the following property:

(a)   any and all confidential information acquired by Defendants from Secure;

(b)   any and all proprietary property acquired by Coal Synthetics through the use of Secure's confidential information;

(c)   any plans, engineering drawings, or other intellectual property generated by or provided to Defendants in connection with Icon and Datel's work for Secure; and

(d)   Ordering Defendants to pay Secure's taxable court costs and reasonable attorneys fees and expenses, as permitted by law, and ordering such other and further relief as this Court deems just and proper under the circumstances.

Respectfully Submitted,

DEVEREUX MURPHY LLC


By:      /s/ Joseph F. Devereux, Jr.
         Robert L. Devereux, #2977
         Sarah W.Rubenstein, #8570
         Joseph F. Devereux, Jr., #2976
         190 Carondelet Plaza, Suite 1100
         St. Louis, Missouri 63105
         (314) 721-1516
         (314) 721-3443 (facsimile)

*Attorneys for Secure Energy, Incorporated and Secure Energy Decatur, LLC*