UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SECURE ENERGY, INC., et al.,          )
                                      )
          Plaintiff(s),               )
                                      )
     vs.                              )          Case No. 4:08CV01719 JCH
                                      )
COAL SYNTHETICS, et al.,              )
                                      )
          Defendant(s).               )

## MEMORANDUM AND ORDER

This matter is before the Court on (1) Defendant Stuart A. Rose's Motion to Dismiss First Amended Complaint (Doc. No. 79); (2) Motion to Dismiss Defendants Matthew Naren Patel and Bryan Handy from Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction or in the Alternative to Transfer the Action to the United States District Court for the Southern District of Ohio (Doc. No. 81); (3) Motion of Defendants Coal Synthetics, LLC, Icon Construction, Inc., Datel Engineering, LLC, Narenda Ramdas Patel, Jesse Gump, Matthew Naren Patel and Bryan Handy to Dismiss Counts 3, 4, 5, 6 and 10 of the First Amended Complaint (Doc. No. 83); and (4) Motion of Defendants Coal Synthetics, LLC, Icon Construction, Inc., Datel Engineering, LLC, Narendra R. Patel and Jesse Gump to Transfer the Action to the United States District Court for the Southern District of Ohio (Doc. No. 95). These matters are fully briefed and ready for disposition.

## BACKGROUND

Plaintiffs Secure Energy and Secure Energy Decatur (collectively, "Plaintiffs" or "Secure")[1] are Delaware corporations with their principal place of business in Clayton, Missouri. (Plaintiffs' First Amended Complaint ("Compl."), Doc. No. 73, ¶ 1). Secure is a development company focused on coal conversion technologies that was founded for the purpose of capitalizing on coal gasification, "a process to convert coal to natural gas or other types of fuels, products or ammonia fertilizer such as urea." (Id., ¶ 15).

Plaintiffs bring a twelve count complaint against various corporate and individual defendants arising primarily from the Defendants' alleged breach of contract and misappropriation of trade secrets involved in the development of a coal gasification plant in Decatur, Illinois. (Id., ¶¶ 80-195). At the root of Plaintiffs' complaint is Secure's agreement with two named defendants, Icon Construction, Inc. ("Icon") and Datel Engineering, LLC ("Datel"). Icon and Datel provide engineering services to industrial clients. (Id., ¶¶ 4, 5). In June 2006, Icon and Datel entered into a contract with Plaintiffs to provide engineering design services for Plaintiffs' coal gasification plant in Decatur, Illinois. (Id., ¶ 19). Plaintiffs allege that, as part of the agreement, Icon's and Datel's agent, Narendra Patel, represented that Secure would be their only client. (Id., ¶ 22). Moreover, Icon signed a confidentiality agreement stating that it would not disclose information regarding the design of the Decatur plant and gasifiers to any third parties without permission from Secure. (Id., ¶¶ 26-27). Icon and Datel performed extensive engineering studies and services for Secure. (Id., ¶¶ 29-31).

---

[1]Secure Energy is a company focused on developing coal conversion technologies. (Compl., ¶ 1). Secure Energy Decatur, LLC is wholly owned by Secure Energy, and was formed for the purpose of owning, constructing and operating Secure Energy's Decatur, Illinois coal gasification facility. (Id., ¶ 2). The parties generally refer to Plaintiff(s) as "Secure".

Secure alleges that, despite the confidentiality agreement and promise that Secure would be Icon and Datel's only clients, sometime in early 2008 Icon and Datel began providing engineering services for Coal Synthetics, LLC ("Coal Synthetics"). (Id., ¶¶ 42-43). Coal Synthetics, a Kentucky limited liability company, is a start-up coal gasification business with its principal place of business in Dayton, Ohio. (Id., ¶ 3). Coal Synthetics hired Icon and Datel to help develop a coal gasification plant in Kentucky. (Id., ¶ 43).

Plaintiffs allege claims for breach of contract against Icon (Count I), breach of fiduciary duty against Narendra Patel, Icon, Datel, Jesse Gump and Bryan Handy (Count II), fraud against Narendra Patel, Icon, Datel, Jesse Gump and Bryan Handy (Count III), negligent misrepresentation against Narendra Patel, Icon, Datel, Jesse Gump and Bryan Handy (Count IV), tortious interference with contract against Narendra Patel, Jesse Gump, Bryan Handy, Matthew Patel, Stuart Rose and Coal Synthetics (Count V), misappropriation of trade secrets under Mo.Rev.Stat. §§ 417.450 et seq. against all Defendants (Count VI), unfair competition against all Defendants (Count VII), civil conspiracy against all Defendants (Count VIII), violation of Missouri Uniform Securities Act, Mo.Rev.Stat. §§ 409.1-102, et seq. against Narendra Patel, Icon and Datel (Count IX), violation of Racketeer, Influence and Corrupt Organization Act ("RICO") 18 U.S.C. § 1964 against all Defendants (Count X), injunctive relief against all Defendants (Count XI). Plaintiffs also seek imposition of a constructive trust against all Defendants (Count XII).

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court must accept "the allegations contained in the complaint as true and draw all reasonable inferences in

favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570,127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Stated differently, to survive a motion to dismiss, the Complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level." Id. at 555 (citations omitted); Gregory v. Dillards, Inc., No. 05-3910, 2009 U.S. App. LEXIS 10101, at *24 (8th Cir. May 12, 2009) ("the complaint must include sufficient factual allegations to provide the grounds on which the claim rests"). A district court is not required to divine the litigant's intent and create claims that are not clearly raised, and the court need not conjure up unpled allegations to save a complaint. Gregory, 2009 U.S. App. LEXIS 10101, at *24 (citations omitted). While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

## DISCUSSION

### I.      Motion to Dismiss Counts 3, 4, 5, 8 and 10 of the Complaint

#### A.      Fraud (Count III)

Under Missouri law, the elements of fraud are: "1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity, or his ignorance of its truth; 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation

being true; 8) his right to rely thereon; and, 9) the hearer's consequent and proximately caused injury." Toghiyany v. Amerigas Propane, Inc., 309 F.3d 1088, 1092 (8th Cir. 2002) (citations omitted); Chase Electric Co. v. Acme Battery Mfg. Co., 798 S.W.2d 204, 210 (Mo. Ct. App. 1990) (citing Heberer v. Shell Oil Co., 744 S.W.2d 441, 443 (Mo. banc 1988)).  Plaintiffs have the burden to establish a submissible case of fraud, and "failure as to any one essential element is fatal to the entire claim."  Mash v. Brown & Williamson Tobacco Corp., No. 4:03cv0485, 2004 U.S. Dist. LEXIS 28951, at *28-29 (E.D. Mo. Aug. 26, 2004) (citing Craft v. Metromedia, Inc., 766 F.2d 1205, 1218 (8th Cir. 1985)).

Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "'Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.'"  Schaller Telephone Co. v. Golden Sky Systems, Inc., 298 F.3d 736, 746 (8th Cir. 2002) (quoting Commercial Property v. Quality Inns, 61 F.3d 639, 644 (8th Cir. 1995)); see also United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557 (8th Cir. 2006).  To comply with Rule 9(b), the pleading must include details such as "the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  United States ex rel. Joshi, 441 F.3d at 556.  Essentially, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." Id.; BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007).  The "particularity required by Rule 9(b) 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" Patterson v. Dierberg's Mkts., Inc., No. 4:08cv0689, 2009 U.S. Dist. LEXIS 18130, at *7 (E.D. Mo. Mar. 10, 2009) (quoting United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003)).  Courts, however, interpret Rule 9(b) "in harmony with the

principles of notice pleading." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001) (citation omitted). Therefore, the Complaint does not have to show all of these factors under Rule 9(b) to plead fraud with sufficient particularity, but must state enough so that its pleadings are not merely "conclusory." Schaller Telephone Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002).

Defendants allege that Plaintiffs fail to plead their claim for fraud with particularity, as required under Fed.R.Civ.P. 9(b). (Memorandum in Support of Motion of Defendants Coal Synthetics, LLC, Icon Construction, Inc., Datel Engineering, LLC, Narendra Ramdas Patel, Jesse Gump, Matthew Naren Patel and Bryan Handy to Dismiss Counts 3, 4, 5, 8 and 10 of the First Amended Complaint ("Defendants' Memorandum in Support"), Doc. No. 84, pp. 2-4). Defendants claim that Plaintiffs' allegations are merely conclusory and do not include the who, what, when, where and how required to properly plead a claim under Rule 9(b).

Reading Rule 9(b) "in harmony with the principles of notice pleading," the Court finds that Plaintiffs have sufficiently alleged the elements of their fraud claim. Schaller Telephone Co., 298 F.3d at 746. Plaintiffs' Complaint contains several specific and distinct allegations of fraud by Defendants. Plaintiffs identify who made the misrepresentation and what was provided in exchange for the information. Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009). Plaintiffs allege that from June 2006 until the present, "during both negotiations and the course of its engagement, Narendra Patel repeatedly represented to Secure that Secure would be Icon/Datel's only client and that all employees of Icon/Datel would be devoted on a full-time basis to Secure's project." (Compl., ¶ 22). In support of their fraud claim, Plaintiffs allege that "Defendants Icon, Datel, Narendra Patel and Gump falsely represented to Secure that they were devoting their full time and attention to Secure's Decatur project, and that they would be able to meet the deadlines that were set by the

Agreement, and instead acted with the sole purpose of delaying Secure's Decatur project, and diverting resources to Coal Synthetics." (Id., ¶ 101). In addition, Plaintiffs allege that the Confidentiality Agreement and Stockholder Agreement obligate Icon and its employees to keep confidential Secure's trade secret information. (Id., ¶¶ 24-25, 27-28). Plaintiffs also allege that Bryan Handy entered into an agreement with his former employer, Kentuckiana, whereby he agreed to keep secret the trade secrets of Kentuckiana's clients. (Id., ¶¶ 53-55). Plaintiffs further allege that Defendants Icon, Datel, Narendra Patel, Gump and Handy falsely represented to Secure that they would not reveal confidential information acquired from Secure. (Id., ¶ 102). Finally, Plaintiffs limited the time span (or "when") of their allegations of fraud from the incorporation of Coal Synthetics (December 2007) to the present. (Id., ¶ 39; Memorandum in Opposition to Defendants' Motion to Dismiss Counts 3, 4, 5, 8 and 10 of the Amended Complaint ("Response"), Doc. No. 91, p. 6).

Contrary to Defendants' assertions, Plaintiffs' allegations are not merely conclusory, but state specific representations, identify persons who made the representations and the time period in which the representations were made. The allegations are sufficiently specific for Defendants to respond to the allegations of fraud. See United States ex rel. Joshi, 441 F.3d at 556. Because Plaintiffs have sufficiently pled the fraud claim, the Court declines to dismiss Count III.

B.      Negligent Misrepresentation (Count IV)

"'The elements of negligent misrepresentation are: (1) the speaker supplied information in the course of his or her business because of some pecuniary interest; (2) due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the

- 7 -

information; and (5) as a result of the listener's reliance on the statement, the listener suffered a pecuniary loss.'" City of St. Joseph v. Southwestern Bell Tel., 439 F.3d 468, 478 (8th Cir. 2006) (quoting Clearly Canadian Beverage Corp. v. American Winery, Inc., 257 F.3d 880, 893 (8th Cir. 2001)) (applying Missouri law). "Negligent misrepresentation requires that the defendant has 'failed to exercise reasonable care or competence to obtain or communicate true information.'" City of St. Joseph, 439 F.3d at 478 (quoting Jim Lynch Cadillac, Inc. v. Nissan Motor Acceptance Corp., 896 S.W.2d 704, 707 (Mo. Ct. App. 1995)).

Defendants' sole basis for seeking the dismissal of Count IV is Plaintiffs' purported failure to plead negligent misrepresentation with sufficient particularity under Rule 9(b). (Defendants' Memorandum in Support, p. 4). Defendants state that Plaintiffs' negligent misrepresentation claim should be required to meet the same pleading requirements as their fraud claim. Defendants assert that "[c]aptioning the count 'Negligent Misrepresentation' does not alter the pleading requirements of Rule 9(b)." (Id.)

Plaintiffs, however, are not required to plead a claim for negligent misrepresentation with particularity because the particularity requirements of Rule 9(b) do not apply. First Franklin Fin. Corp. v. Advantage Mortg. Consulting, Inc., No. 4:07CV1478, 2007 U.S. Dist. LEXIS 92067, at *14 (E.D. Mo. Dec. 14, 2007) (citing cases).[2] Plaintiffs are only required to satisfy the pleading requirements of Fed.R.Civ.P. 8(a) for a negligent misrepresentation claim. Id. This Court finds that Plaintiffs' allegations of negligent misrepresentation are sufficient to satisfy the pleading requirements

_____

[2]Defendants seem to argue that the negligent misrepresentation claim simply is a regurgitation of Plaintiffs' fraud claim. Although Plaintiffs allege in Count IV that "Icon fraudulently billed and accepted payment from Secure for services rendered by Icon to Coal Synthetics" (Compl., ¶ 123), Plaintiffs' allegations in Count IV do not derive solely from Defendants' allegedly fraudulent acts. See also Burt on Behalf of McDonnell Douglas Corp. v. Danforth, 742 F.Supp. 1043, 1051 (E.D. Mo. 1990) ("Plaintiff's theory of reckless or culpable neglect does not involve fraud, and the Court will, therefore, not apply the requirements of Rule 9(b) to plaintiff's pleadings alleging this theory").

of Rule 8. Furthermore, even if Defendants are correct that Plaintiffs are merely trying to assert a claim for fraud, this Court holds that Plaintiffs sufficiently state a claim for fraud, as discussed herein. Accordingly, Defendants' Motion to Dismiss Count IV is denied.

      C.      Tortious Interference with Contract (Count V)

To establish a prima facie case for tortious interference with a contract, the plaintiff must plead facts satisfying these elements: (1) a contract; (2) defendant's knowledge of the contract; (3) intentional interference by the defendant inducing or causing a breach of the contract; (4) absence of justification; and (5) damages resulting from defendant's conduct. Global Media Group, Inc. v. Express Tax Serv., No. 4:05 CV 956, 2005 U.S. Dist. LEXIS 25128, at *9 (E.D. Mo. Oct. 4, 2005); Peabody Holding Co. v. Costain Group PLC, 808 F. Supp. 1425, 1434 (E.D. Mo. 1992); Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 316 (Mo. 1993).

In Count V, Plaintiffs allege a claim for tortious interference with contract against Narendra Patel, Jesse Gump, Bryan Handy, Matthew Patel, Stuart A. Rose and Coal Synthetics. (Compl., ¶¶ 129-139). Plaintiffs assert that Narendra Patel and Gump interfered with Plaintiffs' contract with Defendants Icon and Datel, the employers of Narendra and Gump. (Response, pp. 7-8). Plaintiffs allege that Narendra Patel and Gump "misappropriated and made use of Secure's confidential and proprietary information for their own profit." (Compl., ¶ 135).

Defendants Narendra Patel and Gump assert that they could not have tortiously interfered with Secure's contract with Icon and Datel because Patel and Gump were acting as agents of Icon, who is a party to the agreement with Secure. (Defendants' Memorandum in Support, pp. 4-5; Reply in Support of Defendants' Motion to Dismiss Counts 3, 4, 5, 8 and 10 of the First Amended Complaint ("Reply"), Doc. No. 97, pp. 3-4). Defendants state that only third parties can interfere with a contract. Because they are agents of Icon, Patel and Gump are parties to the contract, not

third parties. (Id.) Therefore, Narendra Patel and Gump assert that they <u>are</u> Icon and cannot be liable for tortious interference. (Id.); <u>Cole v. Homier Distrib. Co.</u>, No. 4:07CV1493, 2007 U.S. Dist LEXIS 87557, at *8 (E.D. Mo. Nov, 28, 2007).

In response, Plaintiffs assert that an agent can be liable for tortiously interfering with its employer's contract where the agent acts for his own benefit and uses improper means. (Response, p. 8); <u>Lynch v. Blanke Baer & Bowey Krimko, Inc.</u>, 901 S.W.2d 147, 153 (Mo. Ct. App. 1995) (corporate officers may be held individually liable for tortious corporate conduct if they have actual or constructive knowledge of, and participated in, an actionable wrong). "[W]here a corporate officer is the defendant absence of justification requires that the officer interfere with the contract for personal, as opposed to corporate, interest **plus** that the officer employed improper means." <u>Eggleston v. Phillips</u>, 838 S.W.2d 80, 83 (Mo. Ct. App. 1992) (emphasis in original). "If the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." <u>Stehno v. Sprint Spectrum, L.P.</u>, 186 S.W.3d 247, 252 (Mo. 2006) (citing <u>Nazeri</u>, 860 S.W.2d at 317). "Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." <u>Id.</u> "[S]atisfying the absence of justification element requires a showing that the defendant interfered with the business expectancy for 'personal, as opposed to corporate' interests." <u>Stehno</u>, 186 S.W.3d at 253 (quoting <u>Eggleston</u>, 838 S.W.2d at 83); <u>Lynch</u>, 901 S.W.2d at 153 ("In an action for inducing a breach of contract, a corporate officer is privileged provided no improper means are used, the defendant acts in good faith to protect the corporation and does not act for his own benefit."). Otherwise, an agent could shield himself from

liability for almost every kind of wrong, provided he was acting in the capacity of an agent. <u>Grothe v. Helterbrand</u>, 946 S.W.2d 301, 304 (Mo. Ct. App. 1997) (citations omitted).

Plaintiffs allege that Narendra Patel and Gump both have equity ownership interests in Coal Synthetics. (Compl., ¶¶ 6-7, 40). Plaintiffs assert that Patel and Gump interfered with Secure's business relationship with Icon and Datel to further their own self-interest in Coal Synthetics. (<u>Id.</u>, ¶¶ 70, 135, 138; Response, p. 8). Patel and Gump could be held liable for tortious interference even though they are agents of Icon and Datel if they were acting for their personal benefit.

Here, Plaintiffs have sufficiently alleged that Defendants Narendra Patel and Gump could have been motivated by their self-interest in Coal Synthetics to interfere with the contract between Secure and Icon and Datel. Plaintiffs allege that Patel and Gump used improper means to obtain Secure's information for their own personal benefit as equity owners of Coal Synthetics. Plaintiffs' allegations that Patel and Gump used Secure's information for their benefit as equity owners of Coal Synthetics satisfies the absence of justification element for Plaintiffs' tortious interference claim. <u>See</u> <u>Stehno</u>, 186 S.W.3d at 253. Based upon Plaintiffs' pleadings, the Court reasonably can infer that Patel and Gump were acting not as agents of Icon but out of their own self-interest when they allegedly tortiously interfered with Secure's contract. The Court denies Defendants' Motion to Dismiss the tortious interference claim against Defendants Narendra Patel and Gump.

D.     Civil Conspiracy (Count VIII)

Defendants assert that Count VIII for civil conspiracy must be dismissed because Missouri common law does not recognize a cause of action for civil conspiracy. (Defendants' Memorandum in Support, pp. 5-6; Reply, pp. 5-6). A claim of civil conspiracy is not an independent cause of action but is cognizable only after an underlying tort claim has been established. <u>Hanten v. School Dist.</u>, 183 F.3d 799, 809 (8th Cir. 1999) (quoting <u>K & S Partnership v. Continental Bank</u>, N.A., 952 F.2d 971,

980 (8th Cir. 1991), cert. denied, 505 U.S. 1205, 120 L. Ed. 2d 870, 112 S. Ct. 2993 (1992)). "If the underlying tort claims are properly dismissed, a claim for civil conspiracy fails to state a claim for relief as a matter of law, and is properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)." Levi v. Anheuser-Busch Co., No. 08-00398-CV-W-RED, 2008 U.S. Dist. LEXIS 87327, at *18-19 (W.D. Mo. Oct. 27, 2008) (citing Hanten, 183 F.3d at 809); see also Southeast Mo. Hosp. v. C.R. Bard, Inc., No. 1:07cv0031, 2008 U.S. Dist. LEXIS 4480, at *31 (E.D. Mo. Jan. 22, 2008) (quoting Zipper v. Health Midwest, 978 S.W.2d 398, 417 (Mo. Ct. App. 1998)) ("'[i]f the underlying claim does not state a cause of action, there can be no claim for civil conspiracy'"); Global Media Group, Inc. v. Express Tax Serv., No. 4:05 CV 956, 2005 U.S. Dist. LEXIS 25128, at *12 (E.D. Mo. Oct. 4, 2005) ("a cause for conspiracy cannot lie absent an underlying wrongful act"). Defendants also assert that Plaintiffs' civil conspiracy claim fails because a principal cannot conspire with its agents. (Reply, pp. 6-7).[3]

The Court has denied Defendants' Motion to Dismiss the fraud, negligent misrepresentation and tortious interference claims against Defendants. Thus, at this stage of litigation, the Court holds that Plaintiffs have sufficiently pled an underlying cause of action.

The Court further notes that "[t]here can be no conspiracy between an agent and a principal." Mika v. Cent. Bank of Kan. City, 112 S.W.3d 82, 94 (Mo. Ct. App. 2003) (citing Metts v. Clark Oil & Refining Corp., 618 S.W.2d 698, 702 (Mo. App. E.D. 1981)). "'An exception to this general rule exists when an employee has an independent personal stake in achieving the object of the conspiracy.'" Id. At this stage of the litigation, this Court cannot find that defendant employees do not have an independent personal stake in achieving the object of the alleged conspiracy. All of the

---

[3]Although Defendants purport to direct this argument related to all defendants, it appears that it would be relevant only to the individual defendants. The corporations, Icon, Datel and Coal Synthetics would not be employees of any other defendant.

individual defendants, except Handy, are financially invested in Coal Synthetics. (Response, p. 10; Compl., ¶ 40). Handy also performed work for Coal Synthetics as an independent contractor and, thus, would appear to have a personal interest in its success. (Response, p. 10, Compl., ¶¶ 56). Plaintiffs' allegations withstand Defendants' Motion to Dismiss.[4] Accordingly, Plaintiffs allege a civil conspiracy claim and Defendants' Motion to Dismiss is denied.

E.    RICO

Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A violation of § 1962(c) requires appellants to show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985). The Eighth Circuit has rejected attempts to convert ordinary civil disputes into RICO cases. Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1029 (8th Cir. 2008). "Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails." Id., at 1028.

1.    Pattern

To survive a motion to dismiss, Plaintiffs must have adequately pleaded a "pattern of racketeering activity." 18 U.S.C. § 1962(c). A pattern is shown through two or more related acts of racketeering activity that "amount to or pose a threat of continued criminal activity." Wisdom v.

---

[4]Defendants criticize Plaintiffs for citing to "legal authorities which support the opposite conclusion--namely, that no conspiracy exists." (Reply, p. 7 (citing Mika, 112 S.W.3d at 95; Metts, 618 S.W.2d at 702). Mika and Metts, however, were resolved on motions for summary judgment.

<u>First Midwest Bank</u>, 167 F.3d 402, (8th Cir. 1999) (quoting <u>United Healthcare Corp., v. Am. Trade</u> <u>Ins. Co.</u>, 88 F.3d 563, 571 (8th Cir. 1996)); 18 U.S.C. § 1961(5).

Plaintiffs have sufficiently alleged a pattern of racketeering activity. Plaintiffs allege two or more distinct but related predicate acts that are sufficient to allege a pattern. Specifically, Plaintiffs allege that Defendants Icon, Datel, Narendra Patel, Gump and Handy made false presentations, failed to disclose information, and issued fraudulent billing. (Compl., ¶173). Plaintiffs also allege that Defendants Matthew Patel, Rose and Coal Synthetics established Coal Synthetics (including choosing the site location and obtaining environmental permits and bonds) using proprietary information from Secure. (<u>Id.</u>, ¶ 174). Plaintiffs allege a pattern of related, fraudulent acts designed to divest Plaintiffs of their confidential information and trade secrets. Plaintiffs allege a pattern of acts with a common purpose sufficient to withstand a Motion to Dismiss.

### 2. Continuity

To satisfy the RICO continuity element, a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged predicate acts threaten to extend into the future (open-ended continuity). <u>Craig Outdoor Adver.,</u> <u>Inc.</u>, 528 F.3d at 1028 (citing <u>H.J. Inc. v. Northwestern Bell Telephone Co.</u>, 492 U.S. 229, 242 (1989)); <u>Lange v. Hocker</u>, 940 F.2d 359, 361 (8th Cir. 1991).

Plaintiffs allege an on-going scheme of racketeering activity from the beginning of 2006 until the fraud was discovered in 2008. (Compl., ¶¶ 19-51, 61-62). At this stage of litigation, the Court finds that Plaintiffs have alleged sufficient duration to support a pattern of racketeering activity under a closed-end continuity test. <u>Cf.</u> <u>Thornton v. First State Bank</u>, 4 F.3d 650, 652 (8th Cir. 1993) (three months was insufficient to demonstrate a "pattern of racketeering activity"); <u>Lange</u>, 940 F.2d

at 361 (citing H. J. Inc., 492 U.S. at 242) (predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement).

        3.      Enterprise

"[E]nterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute…. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.

United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981). The Eighth Circuit has identified "three characteristics possessed by all RICO enterprises: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering." Handeen v. Lemaire, 112 F.3d 1339, 1351 (8th Cir. 1997) (citing Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 995 (8th Cir. 1989)). Proving the existence of an enterprise requires evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit. Craig Outdoor Adver., Inc., 528 F.3d at 1026 (citation omitted). "'The existence of an enterprise at all times remains a separate element which must be proved by the' plaintiff in order to establish a RICO violation." Id. (quoting Turkette, 452 U.S. at 583).

a. Common or Shared Purpose

To show common or shared purpose, "it is not necessary that every single person who associates with the entity gain some discrete advantage as a result of that particular motivation." Handeen, 112 F.3d at 1351. "[A]lthough much about the RICO statute is not clear, it is very clear that those who are 'associate[s],' 18 U.S.C. § 1962(e), of a criminal enterprise must share a 'common purpose.'" Craig Outdoor Adver., Inc., 528 F.3d at 1026 (citation omitted).

Plaintiffs allege that the fraudulent acts "relate to each other and are part of a common plan by Defendants to defraud Plaintiffs." (Compl., ¶ 179). The Court finds that Plaintiffs have sufficiently alleged that Defendants shared the common goals of defrauding Secure of its "proprietary and confidential business information" for the purpose of utilizing it in the creation of Coal Synthetics. See id., ¶¶ 50-51, 61-62, 172-181.

b. Continuity of Structure and Personnel

> Continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis. The continuity-of-personnel element involves a closely related inquiry, in which the determinative factor is whether the associational ties of those charged with a RICO violation amount to an organizational pattern or system of authority. The continuity of these elements need not be absolute.... Both the structure and the personnel of an enterprise may undergo alteration without loss of the enterprise's identity as an enterprise.

Handeen, 112 F.3d at 1351 (quoting United States v. Kragness, 830 F.2d 842, 856 (8th Cir. 1987)).

Here, the Complaint alleges that Datel and Icon preformed engineering and construction services for Secure whereby they learned of certain trade secret information. (Compl., ¶¶ 3, 4, 19, 20, 29). Narendra Patel is a principal of Icon and Datel. (Id., ¶6). Gump is employed by Icon and Datel. (Id., ¶7). The Complaint also alleges an association between Narendra Patel, Matthew Patel, Rose and Gump, who possess an equity ownership interests in Coal Synthetics. (Id., ¶¶ 6-9). Handy, who had previously performed work as an independent contractor for Secure, works for Icon on

behalf of Coal Synthetics, Matthew Patel and Rose. (<u>Id.</u>, ¶¶ 8-10). These sustained and organized associations between these parties sufficiently allege continuity of structure and personnel.

c.    Ascertainable Structure

The Eighth Circuit looks to whether "the enterprise would still exist were the predicate acts removed from the equation" to determine if an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering. <u>Handeen</u>, 112 F.3d at 1352. "'Separating the enterprise from the pattern of racketeering is generally not problematic where a legal entity is involved, since this entity is likely to be clearly distinct from the acts of racketeering.'" <u>Id.</u> (citing <u>Kragness</u>, 830 F.2d at 855, n. 1). Plaintiffs have alleged that Icon, Datel and Coal Synthetics all exist independent of the purported scheme to defraud Secure. (Compl., ¶¶ 3-5). This Court finds that, at this stage of litigation, Plaintiffs have pled that the enterprise had an ascertainable structure independent from the predicate acts of racketeering.

4.    Fraud

Defendants also assert that Plaintiffs have failed to allege their RICO claim with the requisite particularity. As stated previously, Plaintiffs have alleged their claims with enough detail such that Defendants are able to respond adequately and appropriately. Accordingly, Plaintiffs have alleged a claim under RICO sufficient to survive Defendants' Motion to Dismiss.

## II.    Motions to Dismiss for Lack of Personal Jurisdiction

Defendants Rose, Dr. Matthew Naren Patel ("Dr. Patel") and Handy assert that they do not have sufficient minimum contacts with Missouri and, therefore, this Court lacks personal jurisdiction over them (Doc. Nos. 79, 81).

A.     General Standard

The plaintiff bears the ultimate burden of proof on the issue of jurisdiction, but jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003); Trim Fit, LLC v. Dickey, No. 4:06-CV-0049, 2006 U.S. Dist. LEXIS 23449, at *3 (E.D. Mo. April 1, 2006) (quoting Burlington Indus., Inc. v. Maples Indus. Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)).   To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a *prima facie* showing of jurisdiction.   Epps, 327 F. 3d at 647; Anheuser-Busch, Inc. v. City Merchandise, 176 F.Supp. 2d 951, 955 (E.D. Mo. 2001).  This "'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting Block Indus. v. DHJ Indus., Inc., 495 F. 2d 256, 260 (8th Cir. 1974)).  The district court must consider the facts contained in the pleadings and affidavits in the light most favorable to the nonmoving party, Watlow Elec. Mfg. Co. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988), and resolve all factual conflicts in favor of that party. Lakin v. Prudential Secs., Inc., 348 F.3d 704, 706 (8th Cir. 2003); Steinbuch v. Cutler, 518 F.3d 580, 585 (8th Cir. 2008) (citing Dever, 380 F.3d at 1072 ("To survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state.").

To exercise jurisdiction over a non-resident defendant, the Court must find both that the defendant's conduct is covered by the state's long arm statute and also that the defendant has "minimum contacts" with the foreign state that "comports with the dictates of constitutional due process." Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc., 244 F. Supp. 2d 1015, 1018 (E.D. Mo. 2002).  Because the Missouri long-arm statute confers jurisdiction to the limits of due

process, the Court must only consider whether the exercise of personal jurisdiction over the non-resident defendant would violate due process. Trim Fit, No. 4:06-CV-0049, 2006 U.S. Dist. LEXIS 23449, at *5 (E.D. Mo. Apr. 25, 2006); Angelica Corp. v. Gallery Mfg. Corp., 904 F.Supp. 993, 996 (E.D. Mo. 1995).[5] The Eighth Circuit has held that when a state interprets its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause, as Missouri does, the jurisdictional inquiry collapses into the single question of whether the exercise of personal jurisdiction comports with due process. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994); Meredith, Inc. v. Mktg. Res. Group of Or., Inc., No. 4:04CV1727, 2005 U.S. Dist. LEXIS 41427, at *6 (E.D. Mo. Sep. 23, 2005) (quoting Bell v. Imperial Palace Hotel/Casino, Inc., 200 F.Supp.2d 1082, 1085 (W.D. Mo. 2001)).

B.     Background

1.     Stuart A. Rose

Seven of these counts in the Complaint are against individual Defendant Stuart A. Rose ("Defendant" or "Rose"). Defendant Rose is a co-manager of Coal Synthetics. (Defendant Stuart A. Rose's Memorandum in Support of Motion to Dismiss First Amended Complaint ("Rose Memorandum"), Doc. No. 80, p. 3). Rose's involvement in Coal Synthetics stems from his

---

[5]The Missouri Long-Arm Statute provides, in relevant part:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
   (1) The transaction of any business within this state;
   (2) The making of any contract within this state;
   (3) The commission of a tortious act within this state;
***
   (5) The contracting to insure any person, property or risk located within this state at the time of contracting;
***
§ 506.500 R.S.Mo. (2009).

investment in an Ohio company, Rose Coal Synthetics ("RCS"). (Affidavit of Defendant Stuart A. Rose ("Rose Aff."), Doc. No. 80-3, ¶ 4). RCS is an investor in another Ohio company, Kentucky Coal Synthetics ("KCS"). (Id.). KCS is one of two investors in Coal Synthetics. (Id., ¶ 5). The other investor is Energy Concepts Investments ("ECI"). (Id.) KCS's involvement in Coal Synthetics is primarily financial while ECI is charged with providing the technical expertise and intellectual property to Coal Synthetics. (Id., ¶ 8). Both KCS and ECI were allowed to select a co-manager of Coal Synthetics. (Id., ¶¶ 5, 9) KCS selected Rose. (Id., ¶ 9).

Rose is a resident of Ohio. (Id., ¶ 3). Rose asserts that prior to the filing of this lawsuit he had no contact with Plaintiffs or their representatives by mail, telephone, e-mail, personal contact or otherwise. (Id., ¶ 18). He further asserts that prior to the filing of this lawsuit he had no contact by mail, telephone, e-mail, personal contact or otherwise with any individual or business entity in Missouri regarding the matter of this lawsuit. (Id., ¶ 20). Rose states that he was not aware of any contract or agreement between Plaintiffs and Icon or Datel prior to this lawsuit. (Id., ¶¶ 28-29).

2.      Dr. Matthew Naren Patel

Dr. Patel[6] has an equity interest in Energy Concepts Investments, LLC ("ECI"). (Affidavit of Dr. Matthew Naren Patel ("Patel Aff."), Doc. No. 81-2, ¶ 10). ECI has a 50% ownership interest in Coal Synthetics. (Id., ¶ 10). Patel is a co-manager of Coal Synthetics on behalf of ECI. (Id., ¶11). Dr. Patel claims that his investment in ECI is financial and that he has no specialized knowledge or background in the technology or processes relating to coal gasification. (Id., ¶ 11). Dr. Patel states that he had no business or personal contacts with Plaintiffs. (Id., ¶ 5). Dr. Patel asserts that he had no contact with any individual or business in Missouri in connection with the subject matter of this lawsuit. (Id., ¶ 6).

_____

[6]Dr. Patel is a physician specializing in emergency medicine at Clinton Memorial Hospital in Wilmington, Ohio. (Patel Aff., ¶ 2).

Dr. Patel is an Ohio resident. (Id., ¶ 2). Dr. Patel states that he did not know of "any relationship between or among Plaintiffs" and Icon or Datel "that could be affected by Coal Synthetics' project in Kentucky." (Id., ¶ 9). Dr. Patel is not aware of any contacts or connections between either ECI or Coal Synthetics and Plaintiffs. (Id., ¶ 12).

### 3. Bryan Handy

Handy is a Kentucky resident. (Affidavit of Bryan Handy ("Handy Aff."), Doc. No. 81-3, ¶ 2). Handy was employed by Kentuckiana Engineering Company ("KEC") from 2000 until January 2008. (Id., ¶ 4). Plaintiffs retained KEC to provide environmental engineering services for Secure's Decatur, Illinois plant. (Compl., ¶ 52). Plaintiffs' claims against Handy arise out of the work he performed for KEC to benefit Plaintiffs (Id., ¶¶ 52-53), but Handy never entered into an employment agreement with Plaintiffs. (Handy Aff., ¶ 4). Handy is aware that KEC sent a proposal to Secure stating the scope of KEC's work for the Decatur plant and the price. (Id., ¶ 7). Handy asserts that the only agreement between KEC and Secure of which he was aware was the proposal from KEC to Secure regarding KEC's work for the Decatur, Illinois plant. (Id., ¶ 7). During his employment with KEC, Handy prepared an environmental air permit for Plaintiffs' Decatur plant, which was submitted to the Illinois Environmental Protection Agency. (Id., ¶¶ 5-6).

Handy states that he has never been present in Missouri for his work for KEC on the Decatur plant or to meet with Plaintiffs. (Id., ¶ 8). Handy admits that he had communications with Plaintiffs' employees in Missouri by telephone, facsimile and electronic mail. (Id., ¶ 9). Handy claims that his communications with Plaintiffs' employees in Missouri were a "small fraction" of his work and that all of his "substantive communications" were with Plaintiffs' employees in Kentucky and Illinois. (Id.). Handy states that he was not aware of "any relationship between or among Plaintiffs and Defendants Icon Construction Inc. or Datel Engineering Inc. that could be affected by Coal

Synthetics, LLC's project in Kentucky." (Id., ¶ 11). Handy claims that after his employment with KEC terminated, he "volunteered" his service to Coal Synthetics "to review its air permit application relating to its project in Kentucky." (Id., ¶ 13). Handy performed most of his volunteer work for Coal Synthetics in Kentucky, but traveled to Ohio one to two times in connection with the project. (Id.).

C.     Discussion

"Due process requires 'minimum contacts' between a nonresident defendant and the forum state, such that the maintenance  of the suit does not offend 'traditional notions of fair play and substantial justice.'" Steinbuch, 518 F.3d at 585-586 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)); Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (a federal court may exercise personal jurisdiction over a nonresident defendant only if doing so is consistent with both the forum state's long-arm statute and the requirements of the Due Process Clause); Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983) (quoting International Shoe Co. v. Washington, 326 U.S. 310 (1945)).   "The minimum contact inquiry focuses on whether the defendant purposely availed  itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws." Steinbuch, 518 F.3d at 586 (8th Cir. 2008) (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

The Eight Circuit has developed a list of five factors that should be considered in determining if the defendant has minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Epps, 327 F.3d at 648 (citation omitted); Steinbuch, 518 F.3d at 586

(citing <u>Burlington Industries, Inc. v. Maples Industries, Inc.</u>, 97 F.3d 1100, 1102 (8th Cir. 1996)). The first three factors are most important and given more weight than the last two. <u>SRS Energy, Inc. v. Bio-Products International, Inc.</u>, No. 4:08CV285, 2008 U.S. Dist. LEXIS 41693, at *10 (E.D. Mo. May 27, 2008). Essentially, the "defendant's contacts must be more than 'random,' 'fortuitous,' or 'attenuated.'" <u>Affordable Healthcare, LLC v. Protus IP Solutions, Inc.</u>, No. 4:08CV502, 2009 U.S. Dist. LEXIS 23723, at *11 (E.D. Mo. Mar. 20, 2009) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

       1.       Stuart A. Rose

Plaintiffs acknowledge that to satisfy minimum contacts a non-resident defendant must "typically" commit "some purposeful, affirmative conduct within the State." (Plaintiffs' Memorandum in Opposition to Defendant Stuart A. Rose's Motion to Dismiss Plaintiffs' First Amended Complaint ("Rose Opposition"), Doc. No. 88, p. 10). The Court cannot find that Rose purposefully and affirmatively availed himself of the privilege of conducting business in the state of Missouri. Plaintiffs have not alleged that Rose, a citizen of Ohio, had any contacts with Missouri. Rose asserts, and Plaintiffs do not contest, that prior to the filing of this lawsuit he had no contact with Plaintiffs. Rose had no contacts regarding the subject matter of this lawsuit with State of Missouri. He has not entered a contract in the state of Missouri and does not own property in the state of Missouri. While Rose has had contact with other defendants that in turn have had contact with Plaintiffs and the State of Missouri, "the unilateral activity" of others who have a relationship with a nonresident defendant do not satisfy minimum contacts with the forum state. <u>Guinness Import Co. v. Mark VII Distribs., Inc.</u>, 153 F.3d 607, 614 (8th Cir. 1998) ("defendant's contacts with forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of third person").

Plaintiffs assert that Rose's actions had residual effects in Missouri that justify this Court's exercise of jurisdiction.  Plaintiffs argue that despite the lack of purposeful and affirmative contacts Rose had with Missouri, the "Calder doctrine" can support a finding of personal jurisdiction when the defendant commits an intentional tort specifically targeted at the forum state.  (Rose Opposition, pp. 10-11).  In Calder the plaintiff brought suit in California alleging she was libeled in an article written and edited in Florida, by a Florida corporation, the Enquirer.  Calder v. Jones, 465 U.S. 783 (1984).  The Supreme Court held that the California court had jurisdiction over the editor and author of the article based on the fact that the "effects" of their conduct were felt in California.  Id. at 789.  In its holding, the Calder court emphasized that the defendants' actions were "expressly aimed at California" and that the defendants had knowledge that harm would be felt in California.  Id. at 789-90.  The Calder court specifically noted that defendants knew the harm would be felt in California because the largest circulation of the Enquirer is in California and that is where the plaintiff lived and worked.  Id.  Moreover, the defendants had contacted numerous sources in California to obtain information on the case.  Id. at 785.  Applying Calder, Eastern District of Missouri has held that a defendant's out-of-state tortious acts are enough to act as a source of personal jurisdiction only if the plaintiff shows prima facie that the defendant's acts "(1) were intentional (2) were 'uniquely' or expressly aimed at the forum state; and (3) caused harm in the forum state; and that the defendant knew the harm would be felt in the forum state."  T.L.I. Holding Corp. v. Samsung Int'l, Inc., No. 4:07CV01916, 2008 U.S. Dist. LEXIS 49291 at *11 (E.D. Mo. June 27, 2008) (citing Calder, 465 U.S. at 789-90).

This Court holds that it does not have personal jurisdiction over Rose pursuant to the holdings in Calder and T.L.I. Holding Corp.  Rose's actions were not "uniquely" or "expressly" aimed at Missouri.  There is no evidence that Rose knew that the effects of his actions would be felt in

Missouri. In <u>Calder</u> the defendants focused their activities (the writing of the article) specifically on the defendant in California. Moreover, the defendants knew the Enquirer had the most circulation in California and knew that the plaintiff lived and worked in California. Here, Rose had no contacts with Plaintiffs or the state of Missouri related to any of Plaintiffs' claims. Rose's actions in managing Coal Synthetics, namely, assisting with the financial aspects of Coal Synthetic's Kentucky project, were not expressly aimed at Plaintiffs in Missouri. <u>Peabody Holding Co.</u>, 808 F. Supp. at 1437 (citing cases) ("a plaintiff may not invoke tortious long-arm jurisdiction consistent with due process where the non-resident defendant had no contact with Missouri besides the extraterritorial acts having consequences in Missouri."); <u>see also Insituform Techs., Inc. v. Reynolds, Inc.</u>, 398 F. Supp. 2d 1058, 1066 (E.D. Mo. 2005).

Furthermore, the Eastern District of Missouri recently asserted that while an extraterritorial act that has consequences in Missouri can help to subject a defendant to personal jurisdiction, "a plaintiff may not invoke tortious long-arm jurisdiction consistent with due process where the non-resident defendant had no contact with Missouri besides extraterritorial acts having consequences in Missouri." <u>Renaissance Pen Co. v. Krone</u>, No. 4:04 CV 557, 2006 U.S. Dist. LEXIS 21794, at *11-12 (E.D. Mo. Apr. 11, 2006) (quoting <u>Peabody Holding Co.</u>, 808 F. Supp. at 1437. But, "[w]hen a defendant telephones, faxes, or sends mail into Missouri to complete his alleged tortious acts, the exercise of jurisdiction does not offend fair play and substantial justice." <u>Id</u>. at *12. Here, the undisputed evidence is that Rose did not in any way contact Missouri to complete his alleged tortious acts. Rose never contacted Plaintiffs or Missouri related to his ownership interest in and managerial role at Coal Synthetics.

In addition, in Plaintiffs' terse discussion of whether Rose had sufficient minimum contacts with the State of Missouri to satisfy the due process requirements (Rose Opposition, pp. 11-12;

Memorandum in Opposition to Defendants Matthew Naren Patel and Bryan Hardy's Motion to Dismiss Plaintiffs' First Amended Complaint ("Patel/Handy Opposition"), Doc. No. 92, pp. 14-16), Plaintiffs argue that the <u>Calder</u> doctrine allows Rose to be haled into court in Missouri because his conduct specifically targeted the State of Missouri. Plaintiffs liken their situation to that in <u>Anheuser-Busch, Inc. v. City Merch.</u>, 176 F. Supp. 2d 951 (E.D. Mo. 2001). In <u>Anheuser-Busch</u>, plaintiff sued for trademark infringement because defendant had allegedly distributed postcards bearing Anheuser Busch's trademark. <u>Id</u>. at 953. Plaintiffs assert that in <u>Anheuser-Busch</u> the court denied Anheuser Busch's motion to dismiss for lack of personal jurisdiction because the infringement was aimed at a company with its principal place of business in Missouri and because the brunt of the tort was felt in Missouri. (Rose Opposition, pp. 12-13; Patel/Handy Opposition, p. 15). Plaintiffs' summary of <u>Anheuser-Busch</u>, however, ignores the contacts that City Merchandise had with the forum that directly related to Anheuser Busch's cause of action. <u>Anheuser-Busch</u> noted that City Merchandise had placed "its alleged infringing postcard into the stream of commerce, [and] it intentionally distributed the postcards to Missouri, the forum state." <u>Anheuser-Busch</u>, 176 F. Supp. 2d at 958. The <u>Anheuser-Busch</u> court found that it was "certainly foreseeable that the postcards could be purchased by consumers in Missouri since they were specifically ordered from and delivered to Missouri." <u>Id</u>. at 958. Although the quantity of contacts were few, the purchases of postcards directly related to the cause of action because the sales were of the infringing postcards. <u>Id</u>. The court also noted that Missouri has a strong interest in providing a forum for Anheuser- Busch, a large employer and distributor in Missouri, to protect its business from infringement. <u>Id</u>. Thus, the <u>Anheuser-Busch</u> court focused its analysis on the relevant, direct contacts the defendant had with Missouri. In <u>Anheuser-Busch</u>, the contacts were part of the basis for the action against City Management.

None of the direct contacts found in <u>Anheuser-Busch</u> are present here, nor is there any evidence of any tortious acts performed by Rose that directly relate to Plaintiffs' causes of action against Rose. The record before the Court is insufficient to show a substantial relationship between Rose and the state of Missouri. This Court finds that asserting personal jurisdiction over Rose would offend the traditional notions of fair play and substantial justice inherent in due process.

2.      Dr. Matthew Naren Patel

The analysis with respect to Dr. Patel is similar to that of Rose. Plaintiffs base their claim of personal jurisdiction over Patel on his position as a manager of Coal Synthetics and his ownership interest in ECI, which has a 50% ownership interest in Coal Synthetics. There is insufficient evidence to support a finding that Dr. Patel purposefully availed himself of jurisdiction in Missouri.

Dr. Patel has averred that he had no knowledge of any contract or relationship between Secure and Icon and Datel that could be affected by Coal Synthetics' project in Kentucky. (Patel Aff., ¶ 9). There is no evidence that Patel ever conducted business in Missouri or had communications with Plaintiffs' agents. Dr. Patel claims he had no contacts with any individual or business entity in Missouri in connection with the claims of this lawsuit. (<u>Id.</u>, ¶ 6). There is no evidence that Patel directed any activities that were "uniquely" or "expressly" aimed at Missouri or that Dr. Patel knew his actions would affect Missouri. Rather, Plaintiffs' basis for alleging personal jurisdiction are all contacts by Icon and Datel with Secure and Missouri to benefit Coal Synthetics. Unlike <u>Anheuser-Busch</u>, there is no evidence that Dr. Patel had any contacts with the state of Missouri or directed any tortious conduct at Missouri to form the basis of Plaintiffs' claims.

Dr. Patel does not have the requisite contacts with Missouri to justify subjecting him to the jurisdiction of this Court. The only evidence presented is that Dr. Patel had an attenuated financial interest in Coal Synthetics and that he was a manager in Coal Synthetics. There is no evidence that

Dr. Patel had contacts with Missouri or involvement with the decisions at issue in this case. As shown with respect to Rose, Dr. Patel's position as a manager of Coal Synthetics, without more, is insufficient to establish personal jurisdiction in this Court. See Renaissance Pen Co., 2006 U.S. Dist. LEXIS 21794 at *11-12.

This Court finds that Dr. Patel's contacts with Missouri are merely "random," "fortuitious" and "attenuated." United Seating, 2006 U.S. Dist. LEXIS 9332, at *7. Dr. Patel's contacts would not reasonably lead him to believe that he would be haled into Court here. World-Wide Volkswagen Corp., 444 U.S. at 297 (citations omitted). Accordingly, the Court grants Defendant Dr. Patel's Motion to Dismiss for Lack of Personal Jurisdiction.

    3.    Bryan Handy

Plaintiffs base their claim of personal jurisdiction over Handy on work he performed as an independent contractor for Secure while employed by KEC. The parties agree that Handy never traveled to Missouri as part of his job duties. (Handy Aff., ¶ 8). Handy had some e-mail and telephone contact with Secure's agents in Missouri as part of this project. (Id., ¶ 9). Handy performed his work on behalf of Secure in Kentucky and Illinois. (Id., ¶¶ 5, 9).

At this point in the case, this Court cannot find that personal jurisdiction over Handy would offend notions of fair play and substantial justice. Handy has made telephone calls and sent electronic mail messages to Missouri. These calls and messages were related to the work Handy performed on behalf of Secure to develop the Decatur, Illinois plant. Although Handy describes these contacts as "insignificant," the Court cannot rely on Handy's possibly self-serving statement. Considering that Handy made these contacts pursuant to his work on behalf of Secure, then these contacts would likely relate to and support Plaintiffs' claims against Handy that he used information he gained while working on behalf of Plaintiffs to for the benefit of Coal Synthetics. "When a defendant telephones,

faxes, or sends mail into Missouri to complete his alleged tortious acts, the exercise of jurisdiction does not offend fair play and substantial justice." Renaissance Pen Co., 2006 U.S. Dist. LEXIS 21794, at *11-12 (E.D. Mo. Apr. 11, 2006) (quoting Insituform, 398 F. Supp. 2d at 1067).

While Handy was employed by a Kentucky corporation (KEC), he acted as an independent contractor for Secure, a Missouri corporation. Handy was aware of that he was working to benefit Secure. Because of his working relationship, Handy reasonably should have contemplated that he could have been haled into court in Missouri. Furthermore, Handy's employment agreement with KEC included a provision that required that Handy protect the intellectual property of KEC's customers, such as Secure. (Compl., ¶ 54). Having agreed to that provision, Handy contracted for the benefit of Secure, a Missouri corporation, and assumed the risk that he could have been sued pursuant to the work he performed on behalf of Secure.

Handy's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

**III.    Motion to Transfer**

A.    Standard

"Grant or denial of a request to transfer a case under 28 U.S.C. § 1404(a) is within the sound discretion of the trial court." Anheuser-Busch, Inc., 244 F. Supp. 2d at 1022 (citing Hubbard v. White, 755 F.2d 692, 694 (8th Cir. 1985)). Courts afford great deference to a plaintiff's choice of forum. Anheuser-Busch, Inc., 244 F. Supp. 2d at 1022. A party moving for transfer under 28 U.S.C. § l404(a) must bear the burden of showing that transfer is justified. Id. (citing Terra Internat'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).

B.    Discussion

Defendants Coal Synthetics, Icon, Datel, Narendra Patel and Jesse Gump filed a motion to transfer this case to the United States District Court for the Southern District of Ohio ("Motion to Transfer," Doc. No. 95).[7] Defendants assert that the vast majority of witnesses and proof are in Ohio and, therefore, it would be the most convenient and efficient location for this case. (Motion to Transfer, Doc. No. 95, ¶¶ 1, 3). "When considering a motion to transfer venue under 28 U.S.C. §1404(a), the convenience of witnesses is the most important factor." Harrison v. Union Pac. R.R., 45 F.Supp. 2d 680, 684 (E.D. Mo. 1999). Defendants assert that the only witnesses and proof in Missouri relate to Plaintiffs' case. (Motion to Transfer, ¶ 2). Defendants claim that all of Defendants' relevant materials are in Ohio and both party and non-party witnesses relating to Coal Synthetics' Kentucky project are in Ohio or Kentucky. (Memorandum in Support of Motion of Defendants Coal Synthetics, LLC, Icon Construction, Inc., Datel Engineering, LLC, Narendra R. Patel and Jesse Gump to Transfer the Action to the United States District Court for the Southern District of Ohio ("Memorandum in Support"), Doc. No. 96, pp. 2-3).

Plaintiffs argue that transfer of this case is not warranted under 28 U.S.C. §1404(a). Plaintiffs note that location of documents in Ohio is not a factor because documents have been produced electronically, and both parties have equal and easy access to them. (Memorandum in Opposition to Motion of Defendants Coal Synthetics, LLC, Icon Construction, Inc., Datel Engineering, LLC, Narendra R. Patel and Jesse Gump to Transfer, Doc. No. 100, p. 5). Plaintiffs claim that Defendants are the only witnesses from Ohio that they plan to call at trial, and many other witnesses are located in Missouri and other locations. Id., pp. 5-6. Plaintiffs assert that Missouri courts are better

---

[7]Defendants Dr. Patel, Handy and Rose also requested that this Court transfer this case to the United States District Court, Southern District of Ohio, as an alternative form of relief in their Motions to Dismiss. (Doc. Nos. 79, 81).

equipped to apply Missouri law.  Id., p. 6.  Further, Missouri clearly has an interest in this litigation as it involves torts committed against a Missouri corporation.  Id., p. 7.

Thus, both parties argue that they have a number of witnesses who would have to travel if required to litigate in a distant forum.  Defendants' primary argument is that having this case in Ohio would be more convenient to Defendants and there are eight (8) Defendants and only two (2) Plaintiffs in this action.  This Court finds that Defendants have not demonstrated that a transfer of the entire case is justified.  Mere convenience of Defendants is not a sufficient basis to overcome the defendant's burden under 28 U.S.C. §1404(a).  Anheuser-Busch, Inc., 244 F. Supp. 2d at 1022.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss of Defendant Stuart A. Rose (Doc. No. 79) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Stuart A. Rose is **DISMISSED** from this action for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Defendants Matthew Naren Patel and Bryan Handy for Lack of Personal Jurisdiction or in the Alternative to Transfer the Action to the United States District Court for the Southern District of Ohio (Doc. No. 81) is **DENIED**, in part, and **GRANTED**, in part.

**IT IS FURTHER ORDERED** that Defendant Matthew Naren Patel is **DISMISSED** from this action for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that the Motion of Defendants Coal Synthetics, LLC, Icon Construction, Inc., Datel Engineering, LLC, Narendra R. Patel and Jesse Gump to Transfer the Action to the United States District Court for the Southern District of Ohio (Doc. No. 83) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Defendants Coal Synthetics, LLC, Icon Construction, Inc., Datel Engineering, LLC, Narendra Ramdas Patel, Jesse Gump, Matthew Naren Patel and Bryan Handy to Dismiss Counts 3, 4, 5, 8 and 11 of the Complaint (Doc. No. 95) is **DENIED** without prejudice.

Dated this <u>8th</u> day of June, 2009.

<u>/s/ Jean C. Hamilton</u>
UNITED STATES DISTRICT JUDGE