UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SECURE ENERGY, INC., et al., )
)
    Plaintiff(s), )
)
vs. ) Case No. 4:08CV01719 JCH
)
COAL SYNTHETICS, et al., )
)
    Defendant(s). )

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Compel Plaintiff Secure Energy, Incorporated to Provide Discovery (Doc. No. 145). This Motion is fully briefed and is ready for disposition.

**DISCUSSION**

**I.    Deposition of Plaintiffs' Counsel**

To depose opposing counsel, "A party must show that '(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case.'" Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 729 (8th Cir. 2002) (quoting Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)).[1] "The Shelton test was intend to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." Pamida, Inc., 281 F.3d at 730 (citing Shelton, 805 F.2d at 1329). "The practice of forcing trial counsel to testify as a witness, however, has long been discouraged." Shelton, 805 F.2d at 1327; see Hickman v. Taylor, 329 U.S. 495, 512-513 (1947) ("Under ordinary

---

[1]This three prong test is referred to as the Shelton test.

conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production."); Shelton, 805 F.2d at 1330 ("The harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.").

Defendants assert that they are entitled to depose Robert Devereux, counsel for Plaintiffs, regarding statements he made on behalf of Secure Energy, Incorporated ("Secure") in other litigation. Defendants claim that Devereux's other statements are "directly contrary" to Secure's claims in the instant litigation. (Memorandum in Support of Defendants' Motion to Compel Plaintiff Secure Energy, Incorporated to Provide Discovery ("Memorandum in Support"), Doc. No. 146, p. 2). In this case, Secure alleges that Defendants' actions caused "Secure [to fall] behind in the engineering and construction schedule of its Decatur plant," and that "Secure was forced to hire a new engineering firm, which firm will incur the added expense and time of familiarizing itself with the project, will be required to perform a detailed review of all prior engineering and to re-perform much of the engineering and design services for which Secure has already paid Icon." (Amended Complaint, Doc. No. 73, ¶ 76). In contrast, Devereux stated in Delaware Superior Court in March, 2009 that the Secure project was "still in the development process" and "it looks like we're on schedule." (Memorandum in Support, p. 4). Defendants claim that Devereux should be required to testify regarding this purported discrepancy between Secure's pleadings in this case and Devereux's statements to Delaware Superior Court. Defendants also indicate that they intend to call Devereux

as a witness in this case and will move to disqualify him from representing Secure. (Memorandum in Support, p. 5, n. 1).

The Court denies Defendants' motion to compel Devereux's testimony. This case does not fit into the limited circumstances where the court will allow deposition of opposing counsel under the Shelton test. The record indicates that the information sought can be, and in some instances has been, obtained by means other than deposing Devereux. As noted by Secure, Devereux is not the only or the best source of information on the schedule and status of the Secure project. (Memorandum of Plaintiff Secure Energy, Inc. in Opposition to Defendants' Motion to Compel ("Response"), Doc. No. 168, pp. 2-3). Defendants have already deposed Secure's co-founder, Vice President and Secretary, Jack Kenny, who testified that there was a six month delay because of the alleged misconduct of Icon and Coal Synthetics. (Memorandum in Support, pp. 2-3; see also Doc. No. 146-4). Likewise, Lars Scott, Kenny's business partner, testified regarding the problems with Icon's work that resulted in delay in the project. (Doc. No. 174-2, pp. 256-260). Defendants also issued discovery requests regarding Secure's project schedule and status, from which Defendants could verify or discount Secure's claims of delay. (Response, p. 3).

Further, under the second prong of the Shelton test, Devereux should not be deposed because the information sought is privileged. Devereux gained his knowledge regarding any delays with the Secure project from his clients. (Response, p. 3). Therefore, any information that Devereux could testify regarding would be protected work product and/or attorney client communications. See Shelton, 805 F.2d at 1328 ("The work-product doctrine not only protects from discovery materials obtained or prepared in anticipation of litigation, but also the attorney's mental impressions, including thought processes, opinions, conclusions, and legal theories."). Defendants assert that Secure is not entitled to a privilege because Devereux's statement was made in "open court." (Defendants' Reply

Memorandum in Further Support of Defendants' Motion to Compel Directed to Plaintiff ("Reply"), Doc. No. 173, p. 3). While the statements were made in open court, the underlying communications between Devereux and his clients, which would be the subject of Devereux's deposition, remain protected by privilege. The Court finds that Devereux's proposed deposition testimony would be protected by the attorney client and/or work product privileges.

The Court does not believe that Secure has waived its attorney client and/or work product privileges with respect to Devereux's testimony. Defendants acknowledge that the deposition of opposing counsel is not normally allowed but suggest that "when the requested deposition relates to [a] relevant, non-privileged matter arising out of opposing counsel's service in other, terminated litigation, there is no real reason to preclude it." (Reply, pp. 3-4) (citing Pamida, Inc., 281 F.3d at 729). In Pamida, Inc., the plaintiff instituted an action for indemnification seeking recovery for legal expenses incurred in prior litigation, thereby putting the work of its attorneys directly at issue in the case. Pamida, Inc., 281 F.3d at 731. The Pamida, Inc. court noted that the Shelton test "was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." Id. at 730. The Pamida, Inc. court held that Pamida, Inc. waived its attorney client privilege by putting vital information peculiarly possessed by the attorneys central to its claims. Id. at 731.

Although Defendants rely on Pamida, Inc., that case does not support a waiver of privilege in the present action. In Pamida, Inc., a party sought to depose opposing counsel "to discover information peculiarly within counsel's knowledge and centrally relevant to the issues in the [pending] action[.]" Pamida, Inc., 281 F.3d at 731. The Pamida, Inc. plaintiff sought indemnification for attorney fees incurred; therefore, the relevant information was available only to the attorneys. Unlike

in Pamida, Inc., Devereux's mental impressions are not crucial to the present action or central to Secure's claims. Here, Secure requests damages incurred "for the three month transitional delay" when Secure terminated Icon and hired Sega Engineering. (Response, p. 4). Whether or not Secure will can prove a case for delay damages will be based upon the testimony of the fact witnesses and the evidence to support these claims. Devereux's belief or prior statements are not crucial to Plaintiffs' claims, particularly because he is not the only source of information for these claims. Because Devereux's proposed testimony is not central to Secure's claims, there is no waiver of the attorney client and/or work product privileges. Cf. Shelton, 805 F.2d at 1329 (Eighth Circuit reversed the trial court's entry of default judgment against the defendants as a sanction for their in-house counsel's repeated refusal to answer deposition questions concerning the existence of certain documents; the Eighth Circuit determined that plaintiffs' counsel was not seeking to depose opposing counsel in order to discover information uniquely possessed by opposing counsel and central to the litigation, but rather was attempting to confirm the information he had already received which would reveal the opposing counsel's mental impressions). The Court finds no basis to waive these privileges, particularly given that Defendants have had the opportunity to obtain this information from Secure itself.

Finally, Defendants assert that Devereux's statement of fact to the Delaware court on behalf of Secure is an admission by a party opponent pursuant to Fed.R.Evid. 801(d)(2)(C)-(D).[2] (Reply, p. 2). Even if the Court considers Devereux's statement to be an admission by a party opponent, the Court does not find this to be a sufficient basis for deposing Devereux. As stated, Devereux would

---

[2]"The statement is offered against a party and is ... (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence fo the relationship[.]" Fed.R.Evid. 801(d)(2)(C)-(D).

not be able to explain his statement without revealing client confidences protected by the attorney client and/or work product privileges. Defendants, however, can question Devereux's clients regarding the statements made by their attorney. The Court finds an insufficient basis for allowing deposition of Devereux, particularly when it would result in disqualification of Plaintiff's choice of counsel.

In conclusion, the Court finds that Defendants have alternative means to obtain the information they seek from Secure's counsel and that his testimony is protected by the attorney client and/or work product privileges, which have not been waived. Defendants' Motion to Compel the testimony of Robert Devereux is denied.

## II.     Sega Documents

In discovery, Defendants sought documents exchanged between Secure and Sega (the "Sega documents"), which were included on Secure's privilege log. Sega is a company that worked on Secure's coal gasification project prior to Secure terminating Defendants and performed Defendants' work thereafter. (Memorandum in Support, p. 6). Secure named Sega as a non-testifying consulting expert, who was hired to assist in evaluating the quality of work performed by Icon for Secure. (Response, p. 5). Accordingly, Secure claims that the Sega documents are privileged on the grounds of work product. (Memorandum in Support, pp. 7-8; Response, p. 5). Secure, however, also has identified Sega as a fact witness at trial, who will testify as part of its "proof of damages" regarding the "number of hours required for Sega to familiarize itself with the project." (Response, p. 6). Secure states that Sega "will also authenticate bills sent to Secure for such transition work, and will testify about payments rendered from Secure." (Response, p. 6). Defendants assert that the

proposed testimony of Sega relates to the work performed by Sega to transition the project from Icon, which is reflected in the Sega documents. (Memorandum in Support, p. 8).[3]

The Court finds that the Sega documents are relevant to the topics for which Sega will offer testimony as a fact witness. "[A] witness cannot offer testimony based on documents that he or she simultaneously claims are protected by the work product privilege." Kallas v. Carnival Corp., No. 06-20115, 2008 U.S. Dist. LEXIS 42299, at *14 (S.D. Fla. 2008). Secure purports to limit the scope of Sega's fact testimony to "authenticating bills" and receiving payments, but Sega's testimony cannot be so limited. Defendants have a right to explore the basis for those bills, which implicates the Sega's evaluation of Icon's performance, the purported delay due to Icon's performance and Sega's work to transition and continue the project. For example, Sega's billing may reflect additional work by Sega to compensate for Icon's prior performance, and Defendants should be given an opportunity to inquire into these matters.

The Court finds that Sega's evaluation of the work performed by Icon relates to its consequential fees and billing for such work. Because the Sega's testimony as a fact witness relates to its evaluation of Icon's work, the Sega documents are not privileged from production. "Thus, when the party claiming the privilege uses an investigator, or interviewer, as a witness and then attempts to prevent discovery of notes or other materials prepared by the investigator, or interviewer, on the subject of his or her testimony, it is settled that this waives the privilege." Kallas, 2008 U.S. Dist. LEXIS 42299, at *14 (citing U.S. v. Nobles, 422 U.S. 225, 239-40, 95 S. Ct. 2160, 45 L. Ed.

---

[3]For example, Secure's privilege log contains entries such as "Email [from Max Sherman, Sega Engineering] regarding Icon and Datel delays, and engineers assigned to take over work"; "Email [from Max Sherman, Sega Engineering] regarding Icon and Datel's delays and costs to Secure for those delays"; and "Email [from Max Sherman, Sega Engineering] regarding Icon and Datel's delays, and costs to Secure for those delays" (Doc. No. 146-7).

2d 141 (1975)). The Sega documents relate to the transition from Icon to Sega and to Sega's billings for this work performed and are discoverable. (See also Memorandum in Support, p. 8).

The cases cited by Secure do not support its claim that utilizing Sega as a fact witness does not waive its claim of work product privilege. (Response, p. 6).[4] In fact, only one court cited by Secure found that the fact witness's testimony did not waive the privileges associated with being a non-testifying consulting witness. In In re Application for an Order for Judicial Assistance in a Foreign Proceeding, 244 F.R.D. 434 (N.D. Ill. 2007), the district court held that the fact witness's testimony did not waive the protection of the attorney client and/or work product privileges. Id. at 442. The court refused to find a waiver and denied the motion to compel production of documents because the witness's testimony had not occurred and the subject of the witness's testimony was "merely speculative." Id. ("witness's testimony results in waiver only if that testimony reveals the content of privileged communications"). In contrast, here, the parties agree on the topic of Sega's proposed testimony. Sega will testify regarding its billing for work performed for Secure on the Secure project when it took over for Icon. As discussed above, this testimony implicates Sega's work as a non-testifying consulting expert and, therefore, requires disclosure of its communications with Secure.

The remaining cases cited by Sega support a finding that Secure has waived any privilege associated with the Sega documents by naming Sega as a fact witness in this case. In Monsanto Co. v. Cropscience, 214 F.R.D. 545 (E.D. Mo. 2002), the Court held that Monsanto met its burden of proving that opposing side waived the work product immunity with respect to certain expert testing that had been protected by the work product doctrine. Id. at 548.

---

[4]It is unclear why Secure cited Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095, 1099 (7th Cir. 1987), which does not address consulting experts in any capacity.

> [A] court need not compel disclosure of materials an expert considered in his consultative capacity (i.e. before he was designated as a testifying expert) that have no relation to the expert's role as an expert. When, however, the subject matter of those materials relates to the facts and opinions the expert expressed in his report, the courts should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion. In most instances, if the subject matter directly relates to the opinion in the expert report, there will be at least an ambiguity as to whether the materials informed the expert's opinion. This court concludes that this analysis is persuasive. It takes from the proferred expert the subjective, undeterminable conclusion that a document was not "considered." It is important to keep firmly in mind that this is a discovery issue, not a submissibility of evidence question. The expert to which the report was considered or reviewed may be tested by subsequent witness examination.

Id. at 547-548.

Similarly, in Western Resources, Inc. v. Union Pac. R.R., No. 00-2043, 2002 U.S. Dist. LEXIS 1911 (D. Kan. Jan. 31, 2002), the court acknowledged that it might not ever know for certain if the expert reviewed certain documents as a "behind the scenes consultant" or whether those documents formed his expert opinion, but found at a minimum, an ambiguity on that point. Id. at *48-49. Based on this finding, the Western Resources court ordered the defendant to produce every document which related to the facts and opinions expressed in the expert report. Id. at *50.

Finally, in B.C.F. Oil Refining, Inc. v. Consolidated Edison Co., 171 F.R.D. 57 (S.D.N.Y. 1997), the court denied the motion to compel with respect to documents "having no relation to the expert's role as an expert[.]" Id. at 62. The court, however, held "that any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." Id. at 62. The court held that certain documents had to be produced because it was not clear whether the expert reviewed them "solely as a consultant or whether they informed his expert opinion as well." Id.

As an additional reason, Defendants are entitled to the Sega documents to explore Sega's credibility and motive as a testifying witness. See Moss v. Am. Alternative Ins. Corp., No.

5:06CV00010, 2006 U.S. Dist. LEXIS 80329, at *20 (E.D. Ark. Nov. 1, 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("The credibility of the witnesses and any inferences to be drawn from their testimony and other evidence are issues for the jury to resolve."). Sega can be cross-examined on its potential motives for testifying in favor of Secure. Defendants should be allowed to inquire into Sega's additional work for and compensation from Secure related to its work as a non-testifying consulting expert. See also Circle R, Inc. v. Trail King Indus., No. 8:98CV281, 1999 U.S. Dist. LEXIS 23533, at *4-5 (D. Neb. Aug. 11, 1999) (citations omitted) (expert witness disclosures must provide information for, among other things, compensation because it "provides a factual basis to attack the credibility of the expert").

Here, the Court finds that Sega's work as a non-testifying consulting expert will affect its testimony regarding its billing and work. Sega's evaluation regarding Icon's performance affected the work done by Sega to transition the project and, likewise, affected Sega's billing for the project. Moreover, Defendants have a right to inquire regarding Sega's work as a non-testifying consulting expert because it might affect Sega's motive and credibility regarding its testimony as a fact witness. Any ambiguity on these points must be resolved in favor of discovery. The Court finds that Sega's fact testimony weighs in favor of disclosure of documents it considered and prepared as a non-testifying consulting witness. Defendants' motion to compel production of the Sega documents is granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Plaintiff Secure Energy, Incorporated to Provide Discovery (Doc. No. 145) is **DENIED**, in part, and **GRANTED**, in part.

**IT IS FURTHER ORDERED** that Secure shall produce all communications with Sega within ten (10) days of the date of this order.

Dated this 13th day of January, 2010.

                                            /s/ Jean C. Hamilton
                                            UNITED STATES DISTRICT JUDGE