UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SECURE ENERGY, INC., et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:08CV01719 JCH |
| ) | |
| COAL SYNTHETICS, et al., ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel (Doc. No. 203) and Plaintiffs' Motion for Leave to File Motion to Compel (Doc. No. 209). These Motions are fully briefed and are ready for disposition.

## **DISCUSSION**

A.  Background of the Discovery Dispute

On December 31, 2008, Plaintiffs originally served their discovery requests on Defendants Icon Construction ("Icon") and Datel Engineering, LLC ("Datel"). In Request No. 12 to Icon and Datel, Plaintiffs asked for "[a]ll documents relating to engineering plans and drawings developed as a result of the equipment bidding process for the Coal Synthetics Project(s)." (Doc. No. 210-2, p. 8).[1] In their Motion to Compel, Plaintiffs request the production of the electronic versions of the Coal Synthetics engineering drawings in native format.

---

[1] Plaintiffs asked for the same information in their document request number 6 to Coal Synthetics, LLC ("Coal Synthetics"). (Doc. No. 210-3, p. 8).

This case is set for trial on May 3, 2010.[2] The Court ordered the parties to complete all discovery in this case no later than November 20, 2009, and all motions to compel were due eleven (11) days later, on December 1, 2009. (Doc. No. 105).[3] Defendants filed their motions for summary judgment on January 29, 2010. (Doc. Nos. 182, 188, 191, 194). Plaintiffs filed their Motion for Leave to File Motion to Compel and their Motion to Compel on February 2, 2010, more than two (2) months after motions to compel were due. Plaintiffs assert that they began discussing this discovery dispute with Defendants[4] on November 17, 2009, and did not file a motion to compel previously because Plaintiffs believed the parties were engaged in good faith negotiations. (Motion for Leave to File Motion to Compel, Doc. No. 209, ¶¶ 3-5).

Plaintiffs assert that the metadata for the engineering drawings in native format will demonstrate who drafted the drawings, whether they were created from another file and, if so, which file.. (Memorandum in Support of Plaintiffs' Motion to Compel ("Memorandum in Support"), Doc. No. 207, p. 3; Plaintiffs' Reply in Support of Their Motion to Compel ("Reply"), Doc. No. 211, p. 2). Plaintiffs claim that this information may support their claim that Defendants misappropriated Secure's engineering data and manipulated it for the benefit of Coal Synthetics. (Id.)

Defendants, however, note that the parties have been engaged in good faith discussions regarding discovery since at least June 22, 2009, when Plaintiffs' counsel sent a letter to counsel for Icon and Datel regarding their objections to Plaintiffs' discovery requests. (Doc. No. 210-6). The

---

[2]This case has been set for trial on that date since this Court issued its Case Management Order on April 2, 2009. (Doc. No. 105).

[3]The Court granted the parties' motion to amend the case management order on September 3, 2009. (Doc. No. 130). The amended deadlines allowed the parties additional time to complete expert reports and expert discovery and adjusted the dispositive motions deadlines, but did not otherwise alter the deadlines in this case. (Doc. No. 130).

[4]Unless otherwise indicated, "Defendants" refers to Defendants Icon, Datel and Coal Synthetics.

June 22, 2009 letter requested that Icon and Datel identify the documents responsive to Request 12. The June 22, 2009 letter did not request the documents responsive to Request 12 be produced in electronic format. After Icon's and Datel's counsel responded (Doc. No. 210-7), Plaintiffs' counsel sent another brief letter about their on-going discovery dispute. (Doc. No. 210-8). In this July 20, 2009 letter, Plaintiffs did not raise any issues related to Request 12, including no discussion of the native format production of Coal Synthetics's engineering drawings.

Defendants claim that Plaintiffs did not request the Coal Synthetics engineering drawings in native format until November 10, 2009. In a November 10, 2009 letter to Coal Synthetics's counsel, Plaintiffs' counsel noted the absence of "electronic files and metadata" in Coal Synthetics's document production. (Doc. No. 210-9). In a November 16, 2009 letter, Coal Synthetics's counsel responded that it was not aware of any ESI documents responsive to Request No. 6.[5] (Doc. No. 210-10, p. 2). Coal Synthetics's counsel also stated that, pursuant to paragraph 3(a) of the March 20, 2009 Joint Proposed Scheduling Plan, the parties' original discovery requests did not seek the production of ESI or metadata. In addition, counsel for Coal Synthetics noted that Plaintiffs did not produce any ESI as part of their discovery responses. On November 17, 2009, Plaintiffs' counsel demanded that Icon and Datel produce electronic files in native format so as to include any metadata. (Doc. No. 210-11). Defendants' counsel did not respond to the November 17, 2009 letter.[6]

Nearly two months later, on January 11, 2010, Plaintiffs' counsel sent a letter to counsel for the individual Defendants and requested that they produce documents responsive to Request 12 "in

---

[5]As previously stated, Request No. 6 to Coal Synthetics is virtually identical to Request No. 12 to Icon and Datel.

[6]Defendants claim that they did not respond to the Plaintiffs' counsel's November 17, 2009 letter because they had just stated in their November 16, 2009 letter that no documents responsive to Request 6 to Coal Synthetics (and Request 12 to Icon and Datel) existed. (Doc. No. 210, p. 6).

native format so as to include any metadata." (Doc. No. 210-12). Counsel for Defendants Icon, Datel and Coal Synthetics responded that they believed that the ESI issue had been settled by their November 16, 2009 letter. Counsel for Defendants also queried why Plaintiffs waited two additional months, while the deadlines for the close of discovery and time for filing motions to compel lapsed, to raise this issue. (Doc. No. 210-13).

Thereafter, the parties exchanged correspondence attempting to resolve this discovery dispute. On February 1, 2010, Plaintiffs' counsel provided a list of the bates numbers for the "Coal Synthetics drawings" that Plaintiffs wished to have produced in a "native format." (Doc. No. 210-16). On February 2, 2010, Plaintiffs filed this Motion to Compel.[7]

B. Discussion

1. Plaintiffs' Motion is Untimely

As noted by Defendants, Plaintiffs raised their first objections to Defendants' discovery responses in June and July of 2009. At that time, Plaintiffs failed to raise any claim that it was entitled to ESI as part of Defendants' document production. Four months later, just days before the discovery deadline, Plaintiffs first pursued ESI from Plaintiffs. Defendants informed Plaintiffs that the parties had a discovery dispute regarding ESI. Nevertheless, Plaintiffs failed to notify the Court of the parties' dispute. Instead, Plaintiffs allowed the deadlines for the discovery and for filing motions to compel to pass. Plaintiffs finally filed their Motion to Compel on February 2, 2010--almost two months after the deadline for filing motions to compel.

Plaintiffs assert that they did not file their motion timely because they were "under the misimpression that Defendants would agree to produce the files, because Defendants had provided

---

[7]The record is devoid of any response from Defendants regarding the February 1, 2010 letter. It appears that Plaintiffs provided less than 24 hours for Defendants to respond to their list of requested documents.

no indication to the contrary." (Reply, p. 2). Coal Synthetics's November 16, 2009 letter should not have left any misimpression because it stated that Coal Synthetics believed Plaintiffs had not requested the production of ESI in native format or metadata.[8] After receiving this letter, Plaintiffs then waited two months before pursuing this issue. Plaintiffs had ample opportunity to file their Motion to Compel prior to the Court's deadline. Plaintiffs have provided no real basis for resting on their rights and failing to timely file their Motion. The Court denies Plaintiffs' Motion to Compel as untimely. See Green v. Missouri, No. 4:06CV1667, 2009 U.S. Dist. LEXIS 116956, at *4 (E.D. Mo. Dec. 15, 2009) (denying plaintiff's motion to compel as untimely because plaintiff did not present sufficient justification for extending the previously agreed upon deadlines).[9]

2. Defendants fulfilled their discovery obligations.

Plaintiffs assert that they asked for the electronic documents at issue in their discovery requests when they sought "all documents relating to engineering plans and drawings developed as a result of the equipment bidding process for the Coal Synthetics Project(s)." (Memorandum in Support, p. 1). Plaintiffs claim that the definition of "document" included in their discovery requests includes ESI, and Defendants were obligated to produce electronic versions of those drawings. (Memorandum in Support, pp. 1-2; Reply, p. 3).[10]

---

[8]Also, Defendants Icon and Datel never responded to Plaintiffs' November 17, 2009 correspondence. The Court is unclear how Icon and Datel's failure to respond could create the misimpression that Defendants would agree to produce the files in native format.

[9]Plaintiffs claim that "Defendants have no legal right to refuse production of the Coal Synthetics' engineering files." (Reply, p. 2). Plaintiffs, however, forget that their Motion to Compel is untimely. Thus, unless the Court grants their Motion for Leave and their Motion to Compel, then Defendants are within their rights to refuse to engage in discovery at this late date.

[10]The definition of "document" in Plaintiffs' Document Requests included "any data, text, information or images, recorded, maintained or stored in any form and on any media whatsoever, including but not limited to paper, magnetic, optical, celluloid, or electrical storage devices, such as, but not limited to, electronic or computerized data compilations, computer hard drive, floppy disc, magnetic tape, audio tape, video tape, film photograph, microfilm, microfiche, random access

Plaintiffs also argue that they are entitled to the Coal Synthetics's engineering drawings in native format under the terms of the March 20, 2009 Joint Proposed Scheduling Plan. (Memorandum in Support, pp. 3-4 ).[11] Paragraph 3(a)(i) provides that "the parties' initial requests do not seek archived ESI and the parties do not anticipate that production of the archived ESI will be necessary." In paragraph 3(a)(ii), the proposed plan states that "if either party desires archived ESI from the other party, the parties shall confer in good faith to try to reach agreement on such matters." Plaintiffs claim that Defendants have not argued that the electronic versions of the Coal Synthetic drawings in native format are archived. Accordingly, Plaintiffs assert that Defendants should be required to produce those non-archived, native format documents that include metadata. Plaintiffs further claim that the November 2009 correspondence constitutes their effort to confer in good faith.

Finally, Plaintiffs claim that "Rule 34 expressly contemplates the production of electronically stored information." (Reply, p. 3) (citing Fed.R.Civ.P. 34(a)(1)(A)). Fed.R.Civ.P. 34(a)(1)(A) provides that a party can request ESI "stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[.]"

In response, Defendants assert that Plaintiffs' discovery requests never specifically requested production of documents in native format. Although Plaintiffs' rely on Fed.R.Civ.P. 34(a)(1)(A), Plaintiffs' discovery requests did not identify the form for production of the electronically stored information. See Doc. Nos. 210-2, 210-3. Defendants note that Fed.R.Civ.P. 34(b)(1)(C) provides

---

memory, read only memory, USB flash memory drive, compact disc, digital video disc and laser disc." (Doc. No. 207-2).

[11]Curiously, Plaintiffs argue that "the Joint Proposed Scheduling Plan is a *proposed* plan, not an Order of this Court, and as such, is not authoritative in this case." (Memorandum in Support, pp. 3-4)(emphasis in original). Whether or not it is "authoritative," Plaintiffs have not explained why they should not be required to follow the terms of their agreement.

that a request "may specify the form or forms in which electronically stored information is to be produced." In the absence of the court or the requesting party requesting the documents in a particular form of ESI, the producing party "must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed.R.Civ.P. 34(E)(ii). Further, "[a] party need not produce the same electronically stored information in more than one form." Fed.R.Civ.P. 34(E)(iii). Here, Defendants state that Plaintiffs did not identify the requested form of ESI, and Defendants fulfilled their discovery obligations by producing the drawings in paper and portable document format (PDF). (Consolidated Memorandum in Opposition to "Plaintiffs' Motion for Leave to Compel" (#209) and, in the Alternative, in Opposition to Plaintiffs' "Motion to Compel" (#206) ("Response"), Doc. No. 210, p. 10).

In summary, there is no requirement under the federal rules of civil procedure for Defendants to produce the drawings in native format when Plaintiffs failed to specific a format in their requests. Plaintiffs failed to request that Defendants produce their ESI in native format. Defendants fulfilled their discovery obligations by producing the engineering documents in PDF.

        3.      Prejudice

Finally, Plaintiffs claim that Defendants will not be prejudiced because the electronic format documents can be produced via e-mail or disk. (Memorandum in Support, p. 4). Likewise, Plaintiffs argue that Defendants will incur no prejudice because the trial is months away. (Id.) Plaintiffs also note that their "consulting experts have informed them that the native format of the Coal Synthetics engineering files will include metadata." (Reply, p. 2). Plaintiffs claim that they will be able to tell who drafted the engineering drawings and the files from which they were created from the metadata. (Id.) Plaintiffs claim that they will not hire expert witnesses to process the electronic files and, even

if they did, Defendants would not be entitled to depose these consulting, non-testifying experts pursuant to Fed.R.Civ.P. 26(b)(4)(B). (Id.)

Defendants have shown that granting Plaintiffs' Motion to Compel would be prejudicial. Defendants claim that if the ESI exists in native format, it is in the form of AutoCAD ".dwg" files. Defendants assert that .dwg format files do not contain metadata that easily is retrieved or interpreted without expert assistance. (Response, p. 11). Even if Plaintiffs are correct and they will be able to analyze the metadata without expert testimony (or with the help of consulting, non-testifying experts) (Reply, p. 2), Plaintiffs have not shown that Defendants will be able to do the same. If the Court were to allow Plaintiffs to obtain discovery at this late hour, then the Court would have to allow Defendants ample opportunity to examine that discovery on their own part and to review Plaintiffs' analysis of the discovery.

Given that expert testimony may be required regarding the retrieval and interpretation of the metadata from the .dwg files, the Court finds that Defendants would be prejudiced by their late production. Defendants should be permitted to depose any expert regarding the metadata and to tender their own expert, if necessary. The deadlines for designating and deposing experts have passed in this case. In fact, the Defendants have already filed their Motions for Summary Judgment and trial is only three (3) months away. If the Court would grant Plaintiffs' Motion to Compel and allow discovery of the drawings in native format, the Court would have to adjust the case management order to allow for additional discovery; Defendants' Motion for Summary Judgment might have to be refiled; and the trial date would need to be reset. The Court finds that the prejudice to Defendants by these adjustments would not be outweighed by the minor prejudice incurred by Plaintiffs for failing to bring their motion earlier.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel (Doc. No. 206) and Plaintiffs' Motion for Leave to File Motion to Compel (Doc. No. 209) are **DENIED**.

Dated this 17th day of February, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE