UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SECURE ENERGY, INC., et al.,  )
       )
   Plaintiff(s),  )
       )
  vs.  )  Case No. 4:08CV1719 JCH
       )
COAL SYNTHETICS, LLC, et al.,  )
       )
   Defendant(s).  )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion to Exclude the Reports and Testimony of Plaintiffs' Damage Expert G. William Kennedy, Ph.D. (Doc. No. 185). This matter has been fully briefed and is ready for disposition.

## LEGAL STANDARD

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. Rule 702 "favors admissibility if the testimony will assist the trier of fact." Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted). "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592, 113 S. Ct. 2786, 2796 (1993)). "An expert's opinion should be excluded only if that 'opinion is so fundamentally unsupported that it can offer no assistance to the jury.'" Synergetics, Inc. v. Hurst, 477 F.3d 949, 956 (8th Cir. 2007) (quoting Bonner v. ISP Tech., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001)). The admissibility of expert opinion is governed by Fed.R.Civ.P. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

## **DISCUSSION**

Defendants seek an order precluding Plaintiffs from introducing into evidence at trial the reports and expert testimony or opinions of G. William Kennedy, Ph.D. ("Dr. Kennedy"). Defendants identify two defects that they claim make Dr. Kennedy's testimony inadmissible. (Memorandum in Support of Defendants' Motion to Exclude the Reports and Testimony of Plaintiffs' Damages Expert, G. William Kennedy, Ph.D. ("Memorandum in Support"), Doc. No. 186, p. 8).[1]

**I.    Speculative**

Dr. Kennedy calculated a "simple present value" of 25% of the Plaintiffs' projected profit stream (also called the 25% "rule of thumb"). (Memorandum in Opposition to Defendants' Motion to Exclude the Reports and Testimony of Plaintiffs' Damages Expert, G. William Kennedy, Ph.D. ("Response"), Doc. No. 219, pp. 4-5; Memorandum in Support, pp. 4-5). "The 25% rule is a shorthand phrase for a method of dividing expected profit between a licensor and licensee." Standard Mfg. Co. v. United States, 42 Fed. Cl. 748, 766 (Fed. Cl. 1999) (also referring to the 25% rule as a "rule of thumb"). The parties agree that application of the 25% "rule of thumb" is acceptable to

---

[1] Defendants also identify twelve separate bases that purportedly make Dr. Kennedy's expert report inadmissible at trial. (Memorandum in Support, pp. 7-8). Defendants, however, do not brief these twelve points but instead refer the Court to the report of their expert, Mark E. Hoffman. (Memorandum in Support, p. 8, n. 32; Report of Mark E. Hoffman, Doc. No. 205). Although Defendants have offered to make Hoffman available for an "evidentiary hearing" on these twelve points, the Court finds that, because these twelve points have not been briefed, they are not in a proper procedural posture before this Court. Accordingly, the Court will only address the two points briefed by the parties.

determine a reasonable royalty case such as this. See Memorandum in Support, p. 4 (describing Dr. Kennedy's method as "an uncontroversial discounted cash flow methodology," whereby he calculated the present value as 25% of the Plaintiffs' projected stream of profits); Response, pp. 5-6. The main point of contention seems to be the underlying data used by Dr. Kennedy.

First, Defendants claim that Dr. Kennedy's opinion regarding damages is based upon the speculation of Plaintiffs, which cannot form the basis of an expert opinion. Dr. Kennedy based his expert report and testimony on Plaintiffs' 2008 pro forma financial statements. (Memorandum in Support, p. 8). Defendants argue that Dr. Kennedy's opinion should be excluded because it is based upon entirely unverified information from Plaintiffs. (Memorandum in Support, pp. 8-10). Defendants also assert that 25% rule of thumb should be based upon the profit forecasts of the alleged infringer, Coal Synthetics, not Plaintiffs. (Defendants' Reply to Plaintiffs' "Memorandum in Opposition to Defendants' Motion to Exclude the Reports and Testimony of Plaintiffs' Damages Expert, G. William Kennedy, Ph.D." ("Reply"), Doc. No. 228, pp. 7-8).[2]

Plaintiffs respond that the issues raised by Defendants are fact and credibility questions for the jury, not the Court, to determine. According to Plaintiffs, Dr. Kennedy utilized an accepted

---

[2]In their opening Memorandum in Support, Defendants do not claim that the 25% "rule of thumb" should be applied to Coal Synthetics's profits or that the 25% rates is only a "baseline." Rather, Defendants saved these arguments for their Reply brief. (Reply, pp. 7-11). Courts generally do not consider arguments first raised in a reply brief because the other party has not had adequate opportunity to respond to such arguments. See Neb. Plastics, Inc. v. Holland Colors Ams., Inc., 408 F.3d 410, 421, n.5 (8th Cir. 2005) (citing Martin v. Am. Airlines, Inc., 390 F.3d 601, 608 n.4 (8th Cir. 2004) ("This Court does not consider issues first raised in a reply brief unless the appellant gives some reason for failing to raise and brief the issue in his opening brief."); Universal Sewing Supply, Inc. v. Artek Sewing Supplies, Inc., No. 4:05CV974, 2005 U.S. Dist. LEXIS 33428, at *6, n.3 (E.D. Mo. Sept. 8, 2005) ("Defendant improperly raises this argument for the first time in its Reply Memorandum, however, and thus the Court will not address it here."). The Court does not address Defendants' assertion that the 25% rule should have been adjusted per the factors listed in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) because that argument was not address in Defendants' opening brief.

methodology and applied the facts (as provided by Plaintiffs) to determine the damages suffered by Plaintiffs as a result of Defendants' misappropriation of trade secrets. (Response, p. 5). The factual basis of an expert opinion goes to the credibility of the testimony, not its admissibility. Hose v. Chicago Northwester Transp. Co., 70 F.3d 968, 974 (8th Cir. 1996). Although Defendants criticize Dr. Kennedy for not performing an audit of the information provided by Plaintiffs, Dr. Kennedy notes that the information provided was a "forecast" and not capable of something similar to an audit. (Kennedy Deposition, Doc. No. 219-3, p. 89).[3] Instead, Dr. Kennedy noted that, in his expert opinion, the information seemed reasonable and reliable. (Kennedy Deposition, Doc. No. 219-3, pp. 89-90). In particular, Dr. Kennedy argues that the 2008 profit forecast information is reliable because Plaintiffs created those forecasts prior to, and not for purposes of, litigation.

In response to Defendants' claim that Dr. Kennedy should have applied the 25% rule of thumb to Coal Synthetics's profit forecast, Plaintiffs note that Dr. Kennedy attempted to do a 25% analysis of Coal Synthetics's proposed profits. Dr. Kennedy, however, found those results to be disproportionately high (approximately $70 million in damages). (Kennedy Deposition, Doc. No. 219-3, p. 100). Dr. Kennedy instead utilized Plaintiffs' profit forecasts because the results were more moderate ($18.1-$24.6 million in damages). Dr. Kennedy explained that Coal Synthetics was more aggressive regarding revenue, which explained disparity between the calculations. (Kennedy Deposition, Doc. No. 219-3, p. 100). Accordingly, Dr. Kennedy felt it was more appropriate to use the projected profits of Plaintiffs, rather than of Coal Synthetics.

Defendants rely on Lava Trading, Inc. v. Hartford Fire Ins. Co., No. 03 Civ. 7037, 2005 U.S. Dist. LEXIS 44802 (S.D.N.Y. Apr. 11, 2005) for the proposition that Plaintiffs' pro forma was too

---

[3]Defendants seem to agree with this sentiment. Defendants note that "Plaintiff's [sic] 2008 profit forecasts are by definition incapable of verification by any means, whether it be by some accepted statistical regression analysis based upon empirical data, or even by some form of lesser validation through anecdotal evidence of actual success." (Memorandum in Support, p. 9).

speculative to form the basis of an expert opinion. In Lava Trading, Inc., the district court noted that the expert "based his estimate of Lava's 'but-for,' or pro forma, revenues on an S-curve that has its starting point pinned to September 2001, despite the existence of actual revenue data from the introduction of Lava's product at an earlier point in time." Id. at *7. The district court also criticized Lava's expert because he utilized Lava's information "concerning the total volume of potentially available business and the rate at which new clients would have engaged Lava's service and gives these assumptions the mantle of his expertise without a basis that is capable of objective scrutiny." Id. at *9.

Unlike in the present case, the Lava Trading, Inc. expert had "actual revenue data" from which to draw his damages calculation and did not involve a reasonable royalty analysis. Here, the expert had no such revenue data from which to extrapolate a damages calculation. Dr. Kennedy claimed to use the best profit information available, particularly given the hypothetical nature of a reasonable royalty damages calculation. Defendants, of course, will be able to cross-examine Dr. Kennedy on the basis for his calculation, but this Court cannot state, as a matter of law, that his calculations are too speculative. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Also Defendants' expert will have an opportunity to testify regarding his criticisms of Dr. Kennedy's report. See EFCO Corp. v. Symons Corp., 219 F.3d 734, 739 (8th Cir. 2000) (no abuse of discretion in allowing plaintiff's expert witness to testify as to damages where defendant's expert, who disputed plaintiff's expert's methodology, also testified; jury left with ultimate decision as to which damages theory was more sound).

The Court finds that the jury is in a better position to resolve the fact and credibility issues raised by Defendants. The jury can determine whether Dr. Kennedy's decision to base his decision on Plaintiffs' 2008 profit forecast was too speculative. Further, the Court finds Defendants criticisms of Dr. Kennedy for not using Coal Synthetics's profit forecasts to be unavailing. Dr. Kennedy stated that he chose not to use the Coal Synthetics's information because he believed it was too aggressive. The Court finds it is an issue of fact for the jury to determine whether Dr. Kennedy properly used Plaintiffs' profit forecasts instead of Coal Synthetics's profit forecasts given the facts presented.

**II.     Methodology**

Defendants also criticize Dr. Kennedy because of his results-oriented methodology. (Memorandum in Support, p. 10). Defendants argue that the damages calculation would not vary even if the variables changed. (Id.) Defendants claim that Dr. Kennedy's methodology is faulty because it fails to consider what "specific, protected secrets actually were stolen by Defendants, and to allow for apportionment of whatever specific impact the alleged theft any of those trade secrets actually might be, if any, on the future profitability of the Plaintiffs' business." (Memorandum in Support, p. 14). Defendants state, for example, that it would not matter if it took $1 billion and 10 years to develop or $10 and 10 days to develop; the damages would still be the same under Dr. Kennedy's calculation. (Memorandum in Support, pp. 10-11).

In response, Dr. Kennedy claims that he valued the trade secret as a separate asset. (Kennedy Deposition, Doc. No. 219-3, pp. 93-94). Dr. Kennedy described this as the difference between using a cost approach or an income approach of valuing a trade secret. (Kennedy Deposition, Doc. No. 219-3, p. 144-45). Dr. Kennedy states that, in his professional opinion, he thought there was a reasonable basis for valuing the trade secrets separate from the other variables. (Kennedy Deposition, Doc. No. 219-3, p. 100). Under Dr. Kennedy's analysis, the amount of money spent on developing

the trade secret information did not change the results; rather, Dr. Kennedy analyzed the value of the trade secret information in terms of rates of return. (Kennedy Deposition, Doc. No. 219-3, pp. 143-44).

Again, the Court believes that this issue is best left to the jury. Defendants argue that Dr. Kennedy's methodology is faulty because he failed to consider various factors in performing his damages calculation. The jury, as the fact-finder, is in a better position to determine whether Dr. Kennedy considered the proper data in his evaluation and whether his methodology is sound. Defendants' counsel can cross-examine Dr. Kennedy regarding the factors that he did not consider in his damages calculation and test his methodology and credibility.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Exclude the Reports and Testimony of Plaintiffs' Damage Expert G. William Kennedy, Ph.D. (Doc. No. 185) is **DENIED**.

Dated this 27th day of April, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE