UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SECURE ENERGY, INC., et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:08CV1719 JCH |
| ) | |
| COAL SYNTHETICS, LLC, et al., ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment on Claims for Violation of the Missouri Trade Secrets Act (Count VI) and for Breach of Contract (Count I). (Doc. No. 191). This matter has been fully briefed and is ready for disposition.[1]

**SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party

---

[1]The Court refers the reader to the background for this case in its Order on Defendants' Motion for Summary Judgment on Counts I, II, III, IV, V, VII, VIII, IX, XI and XII (Doc. No. 188).

must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258. "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (citing Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## DISCUSSION

### I. MISSOURI UNIFORM TRADE SECRETS ACT

A. Elements

To establish a violation of the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§417.450, *et seq*. ("MUTSA"), Plaintiffs must demonstrate (1) the existence of a protectable trade secret, (2) misappropriation of those trade secrets by Defendants, and (3) damages. Mo. Rev. Stat. § 417.453(2). "Pursuant to MUTSA, misappropriation of a trade secret occurs when a person uses the trade secret of another without express or implied consent if that person: (a) used improper means to acquire knowledge of the trade secret; (b) knew or had reason to know that it was a trade secret and that knowledge had been acquired by accident or mistake; or (c) at the time of the use, knew or had reason to know that knowledge of the trade secret was (1) derived from or through a person who had utilized improper means to acquire it, (2) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (3) derived from or through a person who owed a duty to

the person seeking relief to maintain its secrecy or limit its use. Cerner Corp. v. Visicu, Inc., 667 F. Supp. 2d 1062, 1077 (W.D. Mo. 2009) (citing Mo. Rev. Stat. § 417.453(2)(b)).

B.  Trade Secrets

Defendants claim that they are entitled to summary judgment on Plaintiffs' MUTSA claim because Plaintiffs cannot identify any specific misappropriated trade secrets. Court have used the following factors to determine whether information constitutes a trade secret under MUTSA: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Cerner Corp. v. Visicu, Inc., 667 F. Supp. 2d 1062, 1076-1077 (W.D. Mo. 2009) (citing Am. Family Mut. Ins. Co. v. Mo. Dep't of Ins., 169 S.W.3d 905, 909-10 (Mo. Ct. App. 2005)).

In their Response, Plaintiffs assert that eight different trade secrets were misappropriated by Defendants: (1) its engineering specifications and plans, (2) its engineering drawings, (3) its business plan, (4) its financial models, (5) its methods of identifying and evaluating plant locations, (6) its project schedule, (7) its identification and development of a vendor network and (8) its project bidding estimates. (Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment on Claims for Violation of the Missouri Trade Secrets Act (Count VI) and for Breach of Contract (Count I) ("Response"), Doc. No. 217, p. 6). As shown below, "[t]he parties have provided a great deal of evidence, but that evidence does not point all in one direction. Instead, interpreting

it requires many factual and credibility determinations." Insituform Techs. v. Reynolds, Inc., 4:05CV1116, 2007 U.S. Dist. LEXIS 28941, at *6 (E.D. Mo. Apr. 19, 2007).

    (1)    Engineering Plans and Specifications

Plaintiffs assert that their engineering plans and specifications constitute trade secrets. Plaintiffs claim that they are the only companies in North America and one of only two companies in the world that purchased the Siemens basic engineering design package. (Response, p. 6). Plaintiffs also state that they have customized, at considerable time and expense, the Siemens basic plan to suit their particular needs. (Response, pp. 6-7).

Plaintiffs provide evidence that Defendants misappropriated their engineering plans and specifications for the benefit of Coal Synthetics. Plaintiffs note several similarities between Plaintiffs' plans and drawings and Coal Synthetics's plans and drawings. (Id.) Plaintiffs claim that Coal Synthetics could not have developed its plans and drawings under the abbreviated time schedule without utilizing Plaintiffs' trade secret plans and drawings. (Id.) Plaintiffs assert that the information contained in Coal Synthetics's drawings and air permit do not derive from Plaintiffs' publicly-available air permit, which was filed in 2006, but from the engineering drawings, plans and specifications created for Secure in 2008. (Id.)[2]

In response, Defendants first claim that Plaintiffs have not specified "what Siemens information within the undefined engineering package is protectable or was misappropriated." (Defendants' Reply Memorandum in Support of Motion for Summary Judgment on Claims for Violation of the Missouri Trade Secrets Act (Count VI) and for Breach of Contract (Count I) ("Reply"), Doc. No. 229, p. 4). Defendants assert that the alleged Siemens information in Coal Synthetics' air permit application can be found in the public domain. (Id.) As noted by Defendants,

---

[2]Plaintiffs refer to these as the "Siemens materials." (Response, p. 11).

- 4 -

much of the Siemens information is licensed by Plaintiffs from Siemens. (Reply, p. 4, n. 7). "Therefore, without knowing the specific Siemens information allegedly misappropriated, this Court cannot determine whether the trade secrets at issue belong only to Siemens." (Id.)

Defendants also note that Plaintiffs did not identify the specific engineering drawings that they claim are trade secrets. (Id.) Defendants claim that the general designs for coal plants can be found in many publicly available air permits filed by others, which makes the plant drawings not trade secrets. (Id.) Accordingly, Defendants claim that Plaintiffs must do more than compare drawings and note similarities to bring a misappropriation of trade secrets claim. (Id.)

The Court finds that there is an issue of fact for the jury to decide regarding whether Plaintiffs' engineering plans and drawings are trade secrets. See Gronholz v. Sears, Roebuck & Co., 869 F.2d 390, 393 (8th Cir. 1989) (citing Surgidev Corp. v. Eye Technology, Inc., 828 F.2d 452, 455 (8th Cir. 1987)) ("The issue of whether a plaintiff took reasonable steps under the circumstances to maintain the secrecy of information is an issue of fact."). The jury also must determine whether Defendants misappropriated this information. Plaintiffs have presented evidence that they obtained trade secret information from Siemens, which Defendants then utilized. The record is unclear regarding what Siemens materials constitute trade secrets and are publicly available. Defendants even admit that they do not know which plans and drawings are at issue. Based upon these issues of fact, the Court denies Defendants' Motion for Summary Judgment regarding these materials.

(2)  Business Plan and Financial Models

Plaintiffs assert that their business plans and financial models constitute trade secrets which were misappropriated by Defendants. Plaintiffs claim that they created financial models and forecasts "by integrating the engineering plans of the company with the company's vendor network and bidding estimates, commodity prices, identification and valuation of appropriate plant locations, and project

schedule." (Response, p. 7). Plaintiffs claim that Jesse Gump, an Icon employee, took Plaintiffs' financial model and improperly provided it to Coal Synthetics for its benefit. (Response, p. 11).

Defendants claim that Plaintiffs' business plan and financial models cannot constitute trade secrets as a matter of law. Defendants assert that Plaintiffs fail to identify "any specific financial information, business plan or financial models at issue." (Reply, p. 7). Instead, Defendants claim that Plaintiffs' model is outdated and irrelevant. (Id.)[3] Defendants also assert that there is insufficient evidence of misappropriation because Plaintiffs have only presented evidence that some documents appear similar. (Id.)

The Court finds that there is an issue of fact regarding whether Plaintiffs' business plan and financial models constitute trade secrets and whether Defendants misappropriated those secrets. Plaintiffs have presented evidence that Plaintiffs' and Coal Synthetics's business plans and financial models were virtually identical, which provides some support for an inference that the plans and models were misappropriated. The issue of whether the plans and models were outdated is a question of fact for the jury to decide. The Court denies Defendants' Motion for Summary Judgment on this basis.

(3) Identifying and Evaluating Site Locations

Plaintiffs claim that their method of evaluating site locations for coal gasification plants constitutes a trade secret. Plaintiffs created criteria for evaluating site locations for coal gasification plants, including access to infrastructure, ease of start-up and availability of state investment incentives. (Response, p. 7). Plaintiffs claim that, after spending significant time evaluating locations based on this criteria, they identified several possible locations, including the planned Coal Synthetics site in Western Kentucky. (Response, pp. 7-8). Plaintiffs assert that such sites for coal gasification

---

[3]Defendants base this assertion on statements made by Secure's representative, Mr. Kenny, that their schedule is an ongoing process. (Reply, p. 7).

plants are not readily ascertainable without Plaintiffs' trade secret criteria. Plaintiffs assert that because Coal Synthetics's proposed location satisfies Plaintiffs' site selection factors, this provides sufficient evidence that Icon misappropriated Plaintiffs' site selection system. (Response, p. 11). Plaintiffs claim that Coal Synthetics's proposed location was on Plaintiffs' short list of locations for its first few plant locations. (Id.)

Defendants assert that Plaintiffs' method for identifying and evaluating site locations cannot constitute a trade secret as a matter of law. Defendants claim that Coal Synthetic's site location should not be considered a trade secret merely because it fits Plaintiffs' general selection criteria. (Reply, p. 4). Defendants note that the criteria identified by Plaintiffs are "general" and would be used to develop "a number of possible site locations." (Reply, p. 3). Further, Defendants point out that Plaintiffs have admitted that they did not consider the site chosen by Coal Synthetics. (Id.) Defendants question how a location, not considered by Plaintiffs, could be Plaintiffs' trade secret. (Id.)

While this is a close case, the Court finds that there is an issue of fact regarding whether Plaintiffs' identification and evaluation of site plans constitute trade secrets and whether Defendants misappropriated those secrets. Although the criteria set forth by Plaintiffs appears general, Plaintiffs have provided evidence of their time and expense spent in evaluating site locations, including the site selected by Coal Synthetics. Accordingly, the Court denies Defendants' Motion for Summary Judgment on this basis.

(4) Vendor Network and Project Bidding Estimates

Plaintiffs claim that their vendor network and project bidding estimates constitute trade secrets. Plaintiffs claim that they spent considerable time and money researching and evaluating "the most competent and cost efficient vendors for its use." (Response, p. 8). Plaintiffs also assert that

they painstakingly negotiated agreements with selected contractors. (Id.) Plaintiffs claim that the information revealed regarding these vendors would not be known without spending significant time and money. (Id.) Plaintiffs state that the identity of these vendors and Plaintiffs' agreements with them would not be generally known without performing all of this background work and, consequently, this information constitutes trade secrets. (Id.) Plaintiffs claim that Gump admitted utilizing Plaintiffs' vendor and bidding information in developing the Coal Synthetics project. (Response, p. 11).

Defendants assert that Plaintiffs' vendor network and project bidding estimates were not trade secrets. (Reply, p. 6). Defendants claim that Gump never stated that he utilized Plaintiffs' information. Instead, Gump merely indicated to a potential vendor for Coal Synthetics that he had "knowledge of certain unspecified capital, engineering, and construction costs based on another project." (Reply, pp. 5-6). Defendants claim that Gump's general knowledge of costs related to a coal gasification plant was based on his prior experience on another coal gasification project in Thailand, not Plaintiffs' project. (Reply, p. 6).

The Court finds that there is an issue of fact regarding whether Plaintiffs' vendor network and project bidding estimates are trade secrets and whether Defendants misappropriated those secrets. See also Allen v. Johar, Inc., 823 S.W.2d 824, 826-27 (Ark. 1992) ("customer lists obtained through use of a business effort, and the expenditure of time and money that are not readily ascertainable and are kept confidential are given protection as a trade secret"). The parties have presented an issue of fact regarding whether this information was generally known. Also, the issue of whether this information was misappropriated rests on a credibility decision for the jury. Accordingly, the Court denies Defendants' Motion for Summary Judgment on this basis. See Burlington N. R. Co. v. Omaha

Public Power Dist., 888 F.2d 1228, 1232-33 (8th Cir. 1989) (affirming district court determination that the contract and its pricing formula was a trade secret).

      (5)      Project Schedule

Finally, Plaintiffs claim that their project schedule constitutes a trade secret. Plaintiffs assert that their project schedule was not known to anyone outside of the business and came about only after Secure expended significant time and expense. (Response, p. 9). Plaintiffs, therefore, believe that their project schedule constitutes a protectable trade secret. (Id.) Plaintiffs also note that their schedule and the schedule Icon prepared for Coal Synthetics are "virtually identical." (Response, pp. 11, 16). Plaintiffs argue that it would be impossible for Coal Synthetics to begin developing their coal gasification plans two years after Plaintiffs yet still be on the same timeline for their plant, absent Coal Synthetics misappropriating Plaintiffs' trade secret information.

Defendants assert that this Court has not been given any information to determine whether the project schedule was a protectable trade secret or if the schedule was misappropriated. Defendant also argues that any proposed timeline is not a trade secret because it is outdated. (Reply, p. 6). Defendants assert that mere similarities between Plaintiffs' and Coal Synethetics' schedules are insufficient to demonstrate a misappropriation of trade secrets. (Id.)

The Court finds that there is an issue of fact regarding whether Plaintiffs' project schedule was a trade secret and whether Defendants misappropriated those secrets. Plaintiffs have provided some evidence that they expended significant time and resources in developing this project schedule, and that Coal Synthetics created a "virtually identical" plan without having the same costs or lead time. Also, the jury must determine whether Plaintiffs' timeline is "outdated." The Court finds a sufficient factual dispute and denies summary judgment on this basis.

In conclusion, the Court finds that issues of fact exist related to Plaintiffs' MUTSA claim. As noted by the district court in Insituform Techs. v. Reynolds, Inc., the parties have filed lengthy briefs which highlight their factual disputes and preclude summary judgment:

> The parties filed voluminous briefs, but both sides should have realized that the effort was futile. All of the elements are disputed, and I have only picked out a few disputes to highlight in the discussion above. There is plenty of evidence both to support and to detract from each side's position. Credibility of the witnesses will be very important at trial. The parties' briefs are really just long forms of closing arguments, with each side explaining why it thinks it will win at trial. These are issues for the jury, not for summary judgment.

Insituform Techs., 2007 U.S. Dist. LEXIS 28941, at *8 (denying defendants' motion for summary judgment on the plaintiff's MUTSA claim). Here, the parties argue regarding whether Plaintiffs have provided evidence of trade secrets and whether those trade secrets were misappropriated. Based on the record in this matter, genuine issues of material fact remain as to the alleged trade secrets. These arguments generally come down to issues of fact and credibility that must be decided by the jury. Defendants are not entitled to summary judgment as a matter of law.

## II. DAMAGES

### A. Reasonable Royalty

Plaintiffs assert that they should be permitted to demonstrate damages in the form of a "reasonable royalty." Plaintiffs claim that a "reasonably royalty" rather than a more traditional lost profits analysis applies because neither party has begun operations or has earned any profits. Courts have held that the absence of actual profits does not preclude defendants from being obliged to pay for what they have wrongfully obtained. Linkco, Inc. v. Fujitsu Ltd., 232 F. Supp. 2d 182, 186 (S.D.N.Y. 2002) (citations omitted). "Because the plaintiff's loss or the defendant's gain may be very difficult to calculate in intellectual property cases, a reasonable royalty is 'a common form of award

in both trade secret and patent cases.'" Linkco, Inc., 232 F. Supp. 2d at 186 (quoting Vermont Microsystems, Inc. v. Autodesk, Inc., 138 F.3d 449, 450 (2d Cir. 1998)).

In determining a reasonable royalty, Plaintiffs must first create a hypothetical negotiation between the parties set at the time the misappropriation began. Monsanto Co. v. Hill, No. 4:03-CV-181, 2005 U.S. Dist. LEXIS 43765, at *7 (E.D. Mo. Mar. 28, 2005) (patent infringement case). The parties then determine the royalty the parties would have agreed to, taking into consideration the market at that time. Id. Once the royalty is determined, that value is used to calculate the total amount owed by defendants for their misappropriation of the trade secret. Id. "Therefore, a reasonable royalty is the best measure of damages in a case where the alleged thief made no profits." Linkco, Inc., 232 F. Supp. 2d at 186-87.

The Court agrees that neither unjust enrichment nor lost profits would provide an appropriate means of measuring any potential damages. As previously noted, neither Plaintiffs nor Coal Synthetics have operational plants, and Coal Synthetics claims that it will never become operational. (Response, p. 20). Plaintiffs have provided evidence that its purported trade secrets are valuable to potential entrants to the coal gasification business. Also, the cost of Plaintiffs' development costs may not adequately compensate it for the loss of a valuable trade secret. "Under these circumstances, a reasonable royalty avoids the danger of an inadequate measure of damages by enabling the jury to consider various relevant factors to reach the most practical and sensible award." Linkco, Inc., 232 F. Supp. 2d at 186; Vermont Microsystems v. Autodesk, Inc., 88 F.3d 142, 151 (2d Cir. 1996) (reasonable royalty is a "common form of award in trade secret cases").[4]   Thus, "[i]n lieu

---

[4]A jury may also consider the following factors:

1. The royalties received by the plaintiff for the licensing of the trade secrets to others, which may prove an established royalty;

2. The rates paid by the defendant for the use of other trade secrets comparable to the trade secret

in suit;

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4. The plaintiff's established policy and marketing program to maintain its trade secret by not licensing others to use the invention or by granting licenses under special conditions designed to preserve the trade secret;

5. The commercial relationship between the plaintiff and defendant, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter;

6. The effect of selling the trade secret product in promoting sales of other products of the defendant; the existing value of the trade secret to the plaintiff as a generator of sales of its non-trade secret items; and the extent of such derivative or connected or conveyed sales;

7. The duration of the trade secret and the term of the license;

8. The established profitability of the product made with the trade secret; its commercial success; and its current popularity;

9. The utility and advantages of the trade secret over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the trade secret; the character of the commercial embodiment of it as owned or produced by the plaintiff; and the benefits to those who have used the trade secret;

11. The extent to which the defendant has made use of the trade secret; and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the trade secret or analogous trade secrets;

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-trade secret elements, the manufacturing process, business risks, or significant features or improvements added by the defendant;

14. The opinion testimony of qualified experts;

15. The amount that the plaintiff and the defendant would have agreed upon (at the time the misappropriation began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the trade secret -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have

of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret." § 417.457 R.S.Mo.

B.  Calculation of Reasonable Royalty

"A reasonable royalty may be computed in various ways, including a lump-sum royalty based on expected sales or a running royalty based on a percentage of actual sales." Linkco, Inc., 232 F. Supp. 2d at 188.[5] Plaintiffs also state that they will provide testimony regarding a reasonable amount they would have accepted to sell their trade secrets to a competitor. (Response, p. 21).

Defendants claim that Plaintiffs have not provided evidence of causation to support their reasonably royalty claim. (Reply, pp. 11-12). Defendants claim that Plaintiffs' expert's general calculations cannot support the reasonable royalty claim because Plaintiffs have asserted that Defendants misappropriated only a select number of trade secrets, not the totality of the plant. (Reply, pp. 11-12). Plaintiffs' expert valued the totality of Plaintiffs' trade secrets, not each individual trade secret. (Reply, p. 11, n. 18). Defendants also argue that Kenny's self-serving affidavit, stating that he would accept no less than $60 million for his trade secrets, is "inadmissible and irrelevant." (Reply, p. 13).

The Court finds that Plaintiffs have provided enough evidence to defeat Defendants' Motion for Summary Judgment. Initially, in a separate order, the Court denies Defendants' Motion to

---

been acceptable to a prudent licensor who was willing to grant a license.

Linkco, Inc., 232 F. Supp. 2d at 187, n.7 (citing Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified and aff'd, 446 F.2d 295, 296 (2d Cir. 1971)).

[5]The evidence indicates that Plaintiffs obtained a lump-sum type of license from Siemens for their license. Therefore, there would be at least some evidentiary support that "lump-sum license structures are common in the industry." Linkco, Inc., 232 F. Supp. 2d at 188.

Exclude the Reports and Testimony of Plaintiffs' Damage Expert, G. William Kennedy, Ph.D. (Doc. No. 185). The Court finds sufficient basis to submit Kennedy's testimony to the jury, which also supports a jury determination of whether Plaintiffs are entitled to reasonable royalty damages.

In addition, expert testimony may not be necessary for the jury to award reasonable royalty damages. Courts have provided several criteria to determine whether a plaintiff is entitled to a reasonable royalty. See, e.g., Linkco, Inc., 232 F. Supp. 2d at 187, n. 7; Georgia-Pacific Corp., 318 F. Supp. at 1120; Vermont Microsystems, 88 F.3d at 151-52 (citing University Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 539 (5th Cir. 1974) ("To approximate the parties' agreement, had they bargained in good faith at the time of the misappropriation, the trier of fact should consider such factors as the resulting and foreseeable changes in the parties' competitive posture; the prices past purchasers or licensees may have paid; the total value of the secret to the plaintiff, including the plaintiff's development costs and the importance of the secret to the plaintiff's business; the nature and extent of the use the defendant intended for the secret; and finally whatever other unique factors in the particular case which might have affected the parties' agreement, such as the ready availability of alternative processes."). These cases demonstrate that expert testimony is not required for a jury to award damages, although expert testimony may be a factor in their analysis. The Court finds that the jury can determine whether there is sufficient evidence the award of a lump-sum award or other royalty. Id.

    C.    Punitive Damages, Attorneys' Fees and Prejudgment Interest

Defendants assert that "Plaintiffs may not recover punitive damages because they have no evidence of any 'outrageous' conduct or 'evil motive' by Defendants, as required under the MUTSA. (Memorandum in Support, p. 18). Under Missouri law, "[i]f misappropriation is outrageous because

of the misappropriator's evil motive or reckless indifference to the rights of others, the court may award punitive damages." § 417.457 R.S.Mo.

Plaintiffs allege that they are entitled to seek punitive damages under the MUTSA because Defendants acted with evil motive or reckless indifference to the rights of others. (Response, p. 22). Plaintiffs claim that the evidence will show that Icon, Patel and Gump willfully disclosed Plaintiffs' trade secrets to Coal Synthetics for its benefit. (Response, p. 22). According to Plaintiffs, Rose and Patel knew that they had confidential information, used that information to start Coal Synthetics, and instructed Icon employees to keep that information confidential. (Response, p. 22). The Court finds that Plaintiffs' allegations, if proved, may provide a sufficient basis for submitting punitive damages to the jury. See Synergetics, Inc. v. Hurst, 477 F.3d 949, 960-61 (8th Cir. 2007) (affirming punitive damages award where evidence was presented that defendants, while still employed by plaintiff, began designing a competitive product using plaintiffs' materials and designs, and defendants continued to use plaintiff's trade secret information and caused others to breach their duties of loyalty to plaintiff after termination of their employment). At this stage of litigation, Plaintiffs' allegations are adequate to seek punitive damages. After the evidence is presented at trial, the Court will determine whether Plaintiffs have presented sufficient evidence to submit the issue of punitive damages to the jury.

The Court agrees that Plaintiffs are not entitled to attorneys' fees and prejudgment interest under the MUTSA and grants summary judgment with respect those claims for damages. (Memorandum in Support of Defendants' Motion for Summary Judgment on Claims for Violation of the Missouri Trade Secrets Act (Count VI) and for Breach of Contract (Count I) ("Memorandum in Support"), Doc. no. 192, pp. 18-19).

## III. BREACH OF CONTRACT

Both parties admit that Plaintiffs' claim for breach of contract "rises or falls with [Plaintiffs'] claim under the" MUTSA. (Reply, p. 8; Response, pp. 23-24). For the same reasons as stated above, the Court denies Defendants' Motion for Summary Judgment on Plaintiffs' claim for breach of contract.

## IV. BRYAN HANDY/COAL SYNTHETICS

Defendants claim that Plaintiffs' misappropriation claims against Handy and Coal Synthetics should be dismissed because Plaintiffs have not set forth evidence that Handy or Coal Synthetics improperly obtained, used or disclosed Plaintiff's trade secrets. (Reply, p. 8).

### A. Handy

Defendants claim there is insufficient evidence to support a MUTSA claim against Handy. Defendants assert that Plaintiffs' sole basis for their misappropriation claim against Handy is his use of Plaintiffs' air permit application for the benefit of Coal Synthetics. (Reply, p. 8). Defendants claim that this cannot support a misappropriation claim because the air permit application is publicly available. (Reply, p. 8). Defendants state that Plaintiffs misrepresent the record and that there is no factual support for Plaintiffs' claim that the engineering drawings and air permit files were different than the publicly available air permit application. (Reply, p. 9). Defendants assert that an Icon employee, Mr. Lekson, merely testified that he used Handy as a "resource." (Reply, p. 9, n. 13).

Plaintiffs claim that Coal Synthetics's air permit application and attached drawings contain information from engineering drawings, plans and specifications that were kept confidential by Secure and were created after Secure's air permit. (Response, p. 12). Secure claims that this information was not publicly available and the only source of the information could be Handy's misappropriation of the information for the benefit of Coal Synthetics.

The Court finds that there is a factual dispute as to what information Handy provided and whether the information he provided constituted misappropriation of trade secrets. The Court denies Defendants' Motion for Summary Judgment with respect to Handy.

B.      Coal Synthetics

Defendants claim that Plaintiffs cannot provide evidence that Coal Synthetics acquired Plaintiffs' trade secret information through improper means. (Reply, p. 9). Defendants argue that Coal Synthetics's mere knowledge of Plaintiffs' business is insufficient to demonstrate improper means. Defendants also discuss whether the Plaintiffs provided enough evidence to dispute Coal Synthetics's owners' claims that, as non-engineers, they did not know that the information they received purportedly contained trade secrets. Defendants also argue that Plaintiffs' claim that Coal Synthetics developed its plans more quickly and cheaply than the Plaintiffs does not provide sufficient evidence of misrepresentation.

Plaintiffs have noted a two year time difference in the development plans of Plaintiffs and Coal Synthetics.[6] Plaintiffs also note that there Narendra Patel is listed as a principal of the Coal Synthetics management team in a business overview and that Narendra Patel and Gump are listed as investors on Coal Synthetics's financial model. (Response, p. 13).

The Court finds that Defendants' arguments regarding Coal Synthetics present credibility determinations and issues of fact that jury must decide. In particular, the Court finds sufficient factual dispute regarding whether Coal Synthetics and its investors knew they had misappropriated trade secrets. The Court finds that there is sufficient evidence to withstand summary judgment.

---

[6]Defendants cite to Neil & Spencer Holdings, Ltd. v. Kleen-Rite, Inc., 479 F. Supp. 164, 170 (E.D. Mo. 1979) for the proposition that "similarity of the products and defendant's development of its products 'much more quickly' than plaintiff [is] not sufficient proof of misrepresentation". (Reply, p. 10). Defendants fail to note that Neil & Spencer Holdings, Ltd. is a preliminary injunction, not a summary judgment, case. The standards and burdens of proof clearly differentiate these cases.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on Claims for Violation of the Missouri Trade Secrets Act (Count VI) and for Breach of Contract (Count I) (Doc. No. 191) is **DENIED**, in part, and **GRANTED**, in part, as set forth herein. Defendants' Motion for Summary Judgment is granted with respect to Plaintiffs' claims under the MUTSA for attorneys' fees and prejudgment interest. Defendants' Motion for Summary Judgment is denied with respect to all other claims.

Dated this 27th day of April, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE